DONNER STEEL CO., Inc., v. INTERSTATE COMMERCE COMMISSION.

(Court of Appeals of District of Columbia. Submitted October 3, 1922. Decided January 2, 1923.)

No. 3786.

1. Carriers ☞36—Discrimination by carrier held to have reduced steel company's profits.

Where carriers had discriminated against a steel company by refusing to spot cars for it, or to make an allowance to it for the expense of spotting cars, as they did for its competitors in the same switching district, and the evidence showed that the steel company was unable to control the market price, so that it could not pass such charges on to its customers, it is manifest that the discrimination against that company had resulted in damage to it, by diminishing its profits to the extent of the cost of spotting its cars.

2. Commerce ☞87—Reservation of ruling on evidence by Examiner held not erroneous.

Where the Examiner for the Interstate Commerce Commission ordered proof on the issue of damages to a shipper reserved until after the decision as to the right to damages, and thereafter the Commission found there was no right to reparation, though it did find discrimination against the shipper, the ruling on the evidence was not erroneous, even though the conclusion as to reparation was not correct.

3. Commerce ☞91—Mandamus ☞73(1)—Erroneous decision of Commission, within jurisdiction, can only be corrected by proceedings in error.

An erroneous decision of the Interstate Commerce Commission, acting within its jurisdiction, can only be reviewed by proceedings in error, not by mandamus or certiorari.

4. Mandamus ☞4(1)—Does not lie to review discriminatory decision of tribunal within its jurisdiction.

Mandamus cannot be converted into a writ of error to review errors of law committed by a tribunal, whose jurisdiction is conceded, nor to compel a particular exercise of judgment or discretion.

Appeal from the Supreme Court of the District of Columbia.

Petition for writ of mandamus or certiorari by the Donner Steel Company, Inc., against the Interstate Commerce Commission. From an order dismissing the petition, petitioner appeals. Affirmed.

John Lord O'Brian, of Buffalo, N. Y., and G. Carroll Todd, of Washington, D. C., for appellant.

Walter McFarland and P. J. Farrell, both of Washington, D. C., for appellee.

Before SMYTH, Chief Justice, and ROBB and VAN ORSDEL, Associate Justices.

VAN ORSDEL, Associate Justice. The appeal is from an order of the Supreme Court of the District of Columbia, dismissing appellant's

petition for a writ of mandamus or certiorari to review a decision of the Interstate Commerce Commission.

It appears that appellant, Donner Steel Company, operates two steel plants in or near the city of Buffalo, N. Y., within what is known as the Buffalo rate district. A complaint was filed with the Interstate Commerce Commission against certain carriers operating lines of railway in the Buffalo district. The complaint charged violations, by the railway companies, of sections 1, 2, and 3 of the Interstate Commerce Act (24 Stat. 379 [Comp. St. §§ 8563, 8564, 8565]), to the damage of appellant to the extent of $498,000. The damage is alleged to have arisen from the refusal of the railway companies to spot cars at appellant's plants, or to pay appellant the reasonable cost of spotting its own cars. The companies had performed this service for three of appellant's competitors within the Buffalo rate district—the Buffalo Union Furnace Company, Wickwire Steel Company, and Lackawanna Steel Company. It also appears that the capital stock of the principal line of railway serving appellant's plants was owned by the Lackawanna Steel Company.

Section 3 of the Interstate Commerce Act (Comp. St. § 8565), among other things, provides:

"That it shall be unlawful for any common carrier subject to the provisions of this act to make or give any undue or unreasonable preference or advantage to any particular person, company, firm, corporation, or locality, or any particular description of traffic, in any respect whatsoever, or to subject any particular person, company, firm, corporation, or locality, or any particular description of traffic, to any undue or unreasonable prejudice or disadvantage in any respect whatsoever."

Section 8 of the act (Comp. St. § 8572) provides:

"That in case any common carrier subject to the provisions of this act shall do, cause to be done, or permit to be done any act, matter, or thing in this act prohibited or declared to be unlawful, or shall omit to do any act, matter, or thing in this act required to be done, such common carrier shall be liable to the person or persons injured thereby for the full amount of damages sustained in consequence of any such violation of the provisions of this act."

It is further provided in the act that any person, company, or corporation, claiming to be damaged, as above provided, may bring suit, either before the Interstate Commerce Commission or in any District Court of the United States of competent jurisdiction. The plaintiff, however, is required to elect his forum. If the proceeding is brought before the Interstate Commerce Commission, the Commission, after hearing, shall make a report in writing of its conclusions—

"together with its decision, order, or requirement in the premises; and in case damages are awarded such report shall include the findings of fact on which the award is made." Comp. St. § 8582.

Appellant selected its forum and submitted its proofs. After hearing the case, the Interstate Commerce Commission issued a report and order stating, among other things, as follows:

"Upon the record before us we find no violation of section 1 of the act, but we are of opinion and find that the practice of the defendants to spot cars or to make an allowance for spotting cars for or at the plants of the Lackawanna Steel Company, the Buffalo Union Furnace Company, and the Wickwire

Steel Company, complainant's competitors in the Buffalo rate district, while refusing to spot cars or to make an allowance therefor at the plants of complainant in said district, has been, is, and for the future will be, unduly prejudicial to complainant, in violation of section 3 of the act."

[1] On the question of damages, the Commission found, among other things, as follows:

"The only damage alleged by complainant is loss of profits. * * * We are of opinion, and find, that the complainant has not shown that its profits would have been any greater, had the existing discrimination and prejudice been removed, or that it has suffered any damage of which such discrimination and prejudice are the proximate cause."

This finding seems to be based upon the hypothesis that, during the period covered by the discrimination complained of, the prices of commodities sold by appellant and its competitors were abnormally high; that there was a large demand for pig iron, the principal commodity sold; that appellant's competitors were not able to, and did not, control the buying or selling markets; that appellant's witnesses testified that in fixing selling prices appellant—

"considered all overhead expenses, including the interchange service at its plant; that it sometimes made the market, and possibly undersold its competitors; and that one of its competitors at times had to scale its prices in order to meet those of complainant."

It is not clear, however, how this could operate to equalize profits, since the additional expense which appellant was compelled to sustain, under any circumstances, would operate to that extent to reduce its profits.

It affirmatively appears that appellant had no advantage over its competitors in cost of raw materials and production of the same kind and quality of finished products. The cost of the marketable product was the same, and it sold its goods in the same market as the goods of its competitors were sold. Discrimination resulted from the extra spotting charge, increasing to that extent the cost of transportation. It also appears that appellant was never able to pass this expense on to its customers, hence it increased its expenses by that amount over the expense incurred by its competitors. That this increased expense was sustained by appellant is directly deducible from the finding of fact, by the Commission, that—

"all iron and steel plants in the Buffalo rate district are on an exact parity with respect to freight rates, inbound as well as outbound."

It is contended that this established a tangible and measurable item of damage, according to the rules of law established by the decisions of the Commission. National Malleable Castings Co. v. P. & L. E. R. R. Co., 51 Interst. Com. Com'n R. 537; Stewart Iron Co. v. Pa. Co., 47 Interst. Com. Com'n R. 512; Buffalo Union Furnace Co. v. L. S. & M. S. Ry. Co., 44 Interst. Com. Com'n R. 267. In the latter case, which is in all points analogous to the case at bar, the Commission found as follows:

"The furnace company was in competition with the Lackawanna Steel Company, the Cleveland Furnace Company, and many other iron manufacturers located in Western Pennsylvania and Eastern Ohio. There was competition

between these manufacturers in the purchase of coal, coke, limestone, iron ore, and various other materials. Other furnaces in the Buffalo-Black Rock switching district received their raw materials at the same line-haul rate, and the cars consigned to certain of these furnaces were spotted by the trunk lines or allowances for spotting were made to the industrial roads. The transportation charges paid by the furnace company were higher than those paid by its competitors for a service substantially similar in all respects. Complainant furnace company and these competing furnaces were engaged in manufacturing the same kinds of iron, which were sold in the same competitive markets. 21 I. C. C. 625. It was forced to meet and did meet the prices at which its competitors sold. Under such circumstances it was impossible to add the cost of performing the terminal switching to the selling prices of such products. In consequence, complainant was compelled to absorb that cost out of its profits. It inevitably follows that the complainant furnace company suffered a loss in profits, measured by the cost of that interchange switching service, and we find that it was damaged to the extent of such cost."

[2] Complaint is made by appellant that it was not allowed to submit proof of the damage sustained by reason of the discrimination practiced against it. This contention is not clearly supported by the record. Appellant avers in its petition that, at the hearing before the examiner, it—

"offered to prove in detail the total expense to it of said spotting car service during the period mentioned, but by a ruling of the Examiner of the Commission such proof was ordered reserved until such time, if any, as the Commission should decide that petitioner was entitled to reparation."

We think this tender of proof is not sufficient to justify the charge that appellant was not accorded a full hearing. The Commission held upon the facts that appellant was not entitled to reparation, which foreclosed the necessity of inquiry into the question of specific damage, since no basis was left upon which to predicate damage. The error, if any, committed in finding that appellant was not entitled to reparation, could not be affected by the admission or rejection of the proof tendered.

[3] While it is difficult to understand just the theory upon which the Commission, in the light of its former decisions, reached the conclusion that appellant had not been damaged, yet the law reposes in it jurisdiction to pass upon issues of fact, and if evidence has been excluded that should have been admitted, or a wrong conclusion of fact has been reached and errors of law occur, it results from a mistaken judgment which can only be reviewed and corrected in a proceeding in error.

[4] Appellant is here attempting to require the Interstate Commerce Commission to set aside its judgment and award damages upon the facts adduced. It is not contended that the Commission was without jurisdiction to hear the complaint and make the order complained of, or that its ruling is expressly inhibited by statute; but it is urged that the Commission after finding discrimination, committed an error of law in refusing to award damages to appellant. However inequitable and inconsistent the ruling, it cannot be corrected in this proceeding. It is too well settled to require discussion that the writ of mandamus cannot be converted into a writ of error, for the purpose of reviewing errors of law committed by a tribunal whose jurisdiction to make the

order or judgment complained of is conceded. Commissioner of Patents v. Whiteley, 4 Wall. 522, 18 L. Ed. 335. Nor can the writ be had to compel a particular exercise of judgment or discretion. Riverside Oil Co. v. Hitchcock, 190 U. S. 316, 23 Sup. Ct. 698, 47 L. Ed. 1074; Hall v. Payne, 254 U. S. 343, 41 Sup. Ct. 131, 65 L. Ed. 295; Interstate Commerce Commission v. United States ex rel. Members of Waste Merchants' Association, 43 Sup. Ct. 6, 67 L. Ed. —— (Present Term).

The judgment is affirmed, with costs.