**GEORGE ALLISON & CO., Inc., et al. v. INTERSTATE COMMERCE COMMISSION.**

No. 7362.

United States Court of Appeals for the District of Columbia.

Argued June 7, 1939.

Decided Aug. 7, 1939.

Rehearing Denied Oct. 4, 1939.

Geo. W. Dalzell, of Washington, D. C., and F. Trowbridge vom Baur, of New York City, for appellants.

Thomas M. Ross, of Washington, D. C., for appellee.

Before GRONER, C. J., and MILLER and RUTLEDGE, JJ.

GRONER, C. J.

Appellants filed in the court below a petition for a writ of mandamus to compel the Commission to award damages in accordance with its findings in a rate proceeding. The action was begun prior to the effective date of the new Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, but we think that, notwithstanding the writ has been abolished, rule 81 (b), similar relief is still available and the substantive rights of the parties are governed by principles which were formerly applied in mandamus cases.

The District Court dismissed the petition.

Petitioners are shippers and receivers of Florida strawberries in carload lots and as such intervened in proceedings known as Docket Nos. 24145 and 24671 against Railway Express Agency and others. The proceedings were begun in 1930 and 1931, for the purpose of obtaining a reduction of express rates and express refrigerator charges, etc., in respect to transportation of fresh strawberries from points in Florida to destinations north and west, and also for award of damages for shipments which had moved in the past or which should move during the pendency of the proceedings. The record in another proceeding involving a similar issue, known as Docket No. 23972, was consolidated with the other two proceedings. The evidence was closed December 11, 1931; oral arguments on the record and report of the examiner were heard on October 22, 1932, by Division 5 of the Commission; and its report was filed December 30, 1932. Burch v. Railway Express Agency, 190 I. C. C. 520. The Division found that the express rates had been and for the future would be unreasonable to the extent that they exceeded or should exceed 120 per cent of the first-class freight rates from and to the same points, but that the charges for standard refrigeration service were not shown to be unreasonable. The order directed the establishment of the reduced rate on or before April 20, 1933. The Express Agency, with the assent of the Commission, put them into effect March 3, 1933. The Division's report also awarded reparation in the amount of the difference between the charges paid and those found to be reasonable and provided that the shippers might file proof of the payment of charges in accordance with Rule V of the Commission's Rules of Practice. The shippers, however, were dissatisfied with the findings and applied to the Commission for rehearing. The application was granted, and the case was reargued June 14, 1933, before the full Commission, and on November 7, 1933, new findings were made as follows: (1) that prior to March 3, 1933 (the effective date of the prior order), the assailed rates were unreasonable to the extent that they exceeded 120 per cent of the first-class freight rates from and to the same points, and that "such rates are and for the future will be unreasonable to the extent that they exceed or may exceed 105 per cent of the present first-class freight rates"; (2) that the charges for standard refrigeration "are and for the future will be unreasonable to the extent

that they exceed or may exceed 85 per cent of present charges from and to the same points"; and (3) that the shippers were damaged in the respective amounts of the differences between the charges paid and those which would have accrued at the rates and charges found reasonable, and that they were entitled to reparation in those amounts with interest. 197 I.C.C. 85.

The new rates and charges were ordered into effect on or before December 28, 1933. But prior to that date the shippers again petitioned the Commission to modify its order so as to apply the 105 per cent basis to shipments prior to March 3, 1933. This was denied January 2, 1934. The Express Agency, being aggrieved by the new rate, then brought suit in the District Court for the Southern District of New York to set aside the order in so far as it reduced the future rate to 105 per cent and the refrigeration charge to the 85 per cent basis. At the suggestion of the District Court, the effective date of the Commission's order was postponed until ten days after the court's decree. On March 7, 1934, the court sustained the Commission's order, and the prescribed rates went into effect March 17th. Shippers in turn instituted a suit in the same court, seeking to set aside the findings with respect to the measure of the unreasonableness of rates prior to March 3, 1933. This suit was dismissed, and another brought with different attorneys, after hearing, was dismissed September 11, 1935, for lack of jurisdiction.[1] The decree was affirmed November 11, 1935, by the Supreme Court.[2] Petitioners then returned to the Commission and again asked for the same modification of the order. The Commission denied the application, and on November 9, 1936, reopened the case for the purpose of determining the amount of reparation due on the basis of its report and findings of November 7, 1933. Acting through Division 2, the Commission on March 11, 1938, determined the amount of damages due upon cars shipped prior to March 3, 1933, and entered an order awarding reparation therefor with interest at 6 per cent from dates of payment, except for the period, November 5, 1934, to July 23, 1936, during which the shippers had delayed settlement and payment of reparation by litigation. The Division refused to award reparation upon shipments moving between March 3, 1933—the date when the 120 per cent rate became effective under the Commission's original order (Division 5)—and December 28, 1933, when the 105 per cent rates and 85 per cent refrigeration charges were to become effective under the November 7th order.[3] The reason for this was that the rates paid in that period were in accordance with the Commission's original finding and order.

All the shipments involved in this proceeding moved prior to December 28, 1933.

Petitioners' prayer is that mandamus issue to compel the Commission to order (1) repayment by the Express Agency of charges on shipments moving between December 1, 1929 (the original effective date of the assailed rates), and March 3, 1933, in excess of 105 per cent of the applicable freight rates and in excess of 85 per cent of the then existing refrigerating charges, with interest from the date the charges were paid; (2) repayment of amounts paid on shipments moving between March 3, 1933, and December 28, 1933, in excess of 105 per cent of freight rates and 85 per cent of refrigeration charges, with interest; and (3) payment of interest for the period between November 5, 1934, and July 23, 1936[4].

The Commission argues on this appeal (1) that petitioners, having submitted their claims to the Commission, are bound by its decision; (2) that the Commission's denial of an award or reparation is not subject to review by mandamus or otherwise; (3) that the Commission cannot be compelled to increase its award; and (4) that its findings are not arbitrary. Undoubtedly, the rule is that mandamus may not issue to control the Commission's discretion or to require it to enter a reparation order in a case in which the Commission has held it should not do so. Interstate Commerce Comm. v. United States ex rel. Waste Merchants' Ass'n, 260 U.S. 32, 43 S.Ct. 6, 67 L.Ed. 112; Donner Steel Co., Inc. v. Interstate Commerce Comm., 52 App.D.C.

---

[1] George Allison & Co. v. United States, D.C., 12 F.Supp. 862.

[2] 296 U.S. 546, 56 S.Ct. 175, 80 L.Ed. 387.

[3] As stated above, these rates were not in effect until March 17, 1934, but this case is not concerned with any shipments made after December 28, 1933. Repara-

tion for shipments between the two dates was awarded to the satisfaction of shippers in R. W. Burch, et al., v. Railway Express Agency et al., 201 I.C.C. 51.

[4] The Commission's order had March 7, 1934, instead of Nov. 5, 1934. The clerical error was brought to the Commission's attention and corrected after the filing of the petition below.

221, 285 F. 955; Bartlesville Zinc Co. v. Interstate Commerce Comm., 58 App.D.C. 316, 30 F.2d 479; Interstate Commerce Comm. v. United States ex rel. Capital Grain & Feed Co., 59 App.D.C. 118, 35 F.2d 1012; Interstate Commerce Comm. v. United States ex rel. Campbell, 289 U.S. 385, 53 S.Ct. 607, 77 L.Ed. 1273; United States ex rel. Kroger Grocery Co. v. Interstate Commerce Comm., 64 App.D.C. 43, 73 F.2d 948. But in the view we take of the case, it is not necessary to consider any of the points insisted on by the Commission except to notice the last, since petitioners do not assert that the court may compel the Commission to change an award or to make an award in a case in which it has held reparation improper. What petitioners ask and all that they ask is that the Commission be compelled to order payment of damages in accordance with its report and findings, or, stated otherwise, that the Commission, having found that the shippers are entitled to reparation in specific amounts, with interest, and now refusing to order payment, should be required to do so by an order of the court. Counsel for shippers again and again point out that they do not ask for a trial on the merits or for a revision of the award nor a finding that the shippers have been damaged. All they ask is an order compelling the Commission to require payment of reparation which "concededly" was found to be due.

■ In this view, the case is simplified, for in our opinion the rule is and ought to be that, if the record sustains petitioners' claim that the Commission has made a finding of reparation and has declined to order payment, mandamus is available to require this to be done. The statute makes this duty mandatory, 49 U.S.C. § 16(1), 49 U.S.C.A. § 16(1), and this, we think, was recognized by the Supreme Court in Interstate Commerce Comm. v. United States ex rel. Campbell, 289 U.S. 385, at page 393, 53 S.Ct. 607, 77 L.Ed. 1273. This, then, brings us on this aspect of the case to consider whether petitioners' claim is correct that the Commission has found petitioners entitled to specific amounts and refuses to order them paid; and this in turn involves an examination of the several orders and findings.

■ The record shows that prior to 1929 Florida strawberry growers had difficulty in placing their product on the market in cities as far away as New York, Boston, and Chicago. The Commission investigated, and required the railroads to inaugurate a new fast service, which greatly improved the situation, and on December 1, 1929, the Railway Express Agency, the instrumentality chosen by the railroads to accomplish the result, put into effect a tariff of rates, which in 1930 and 1931 petitioners and other shippers of strawberries attacked as excessive and unreasonable. At the first hearing Division 5 concluded that the rates were excessive to the extent that they exceeded 120 per cent of first-class freight rates but that the refrigeration charges were not unreasonable. The rates then determined to be reasonable, were put into effect March 3, 1933, but upon further complaint by petitioners and others the Commission reheard the case and in part modified the original finding. The modification did not apply to shipments moving prior to March 3, 1933. As to all such shipments the Commission expressly held, as it had formerly held, that the rate was excessive to the extent and only to the extent that it exceeded 120 per cent of the then first-class rates. The modification of the original order consisted of the substitution for the future of a 105 per cent rate basis, instead of the 120 per cent basis, and an 85 per cent charge for refrigeration, both to become effective from and after December 28, 1933. The language used in the finding is susceptible of no other construction.

Specifically, the finding is (1) that prior to March 3, 1933, the assailed rates *were* unreasonable to the extent that they exceeded 120 per cent of the present rates, and (2) that such rates *are and for the future will be* unreasonable to the extent that they exceed 105 per cent of the present rates. The language used leaves little to construe. The Commission has itself many times construed it and held it to mean precisely what it now says it means. The question here first arose, at the instance of the shippers, between the date of the findings and the effective date of the order entered thereon, that is to say, between November 7, 1933, and December 28, 1933, and the application for modification was denied. It arose again in the middle of 1936 after the dismissal of the shippers' suit in the District Court, when the Commission on the second application of the shippers declined modification so as to apply the 105 per cent rate basis prior to March 3, 1933. Finally, in its report of March 11, 1938, on the hearings to fix the amount of reparation (Wishnatzki & Nathel v. Railway Express Agency, 226 I. C. C. 637) the Commission, referring to the findings of Novem-

# 184

ber 7, 1933, and to the 105-85 per cent basis, said: "Those bases of rates and charges, found reasonable in the latter report, were prescribed for the future only."

In cases of other shippers arising out of the same tariff the Commission has interpreted its findings in the same manner. One shipper paid the tariff rates on shipments delivered between February 6, 1933, and March 10, 1933. The payments were not above the 120 per cent level, but the shipper claimed reparation on the 105 per cent basis. The Commission denied the claim (Musante, Berman, Steinberg Co. v. Railway Express Agency, 211 I. C. C. 467), saying: "On reargument, [Burch v. Railway Express Agency], 197 I. C. C. 85, the Commission affirmed the findings of division 5 on shipments delivered prior to March 3, 1933, and modified the findings of the division to the extent of prescribing for the future rates made 105 percent of the first-class freight rates then in effect. These rates were established on March 17, 1934."

Later the Commission passed upon claims for reparation based on shipments in 1931 and 1932. The claims again included the excess of rates above 105 per cent and also 15 per cent of the refrigeration charges. Reparation was granted only for the excess above 120 per cent, and nothing was awarded on the refrigeration charges. Daw v. Railway Express Agency, 214 I. C. C. 35; John Nix & Co. v. Railway Express Agency, 215 I. C. C. 514.

Like interpretation of the words of the finding—are and for the future will be— is to be found in the opinions in the statutory court cases growing out of this controversy. In Railway Express Agency, Inc., v. United States, D.C., 6 F.Supp. 249, the Agency argued, just as petitioners now argue, that the findings were arbitrary and pointed to the different findings for the past and present as an example of unfounded conclusion. The court disposed of the argument by saying that the finding was properly framed in that way so that the carrier would not have to pay reparation on prior shipments on the new found basis, and cited Arizona Grocery Co. v. Atchison, T. & S. F. Ry. Co., 284 U.S. 370, 52 S.Ct. 183, 76 L.Ed. 348. And in Allison & Co. v. United States, D.C., 12 F.Supp. 862, 863, petitioners prayed "annulment of that part of the order of November 7, 1933, which fixed as reasonable express rates not in excess of 120 per cent * * * for the period from December 1, 1929, to December 28, 1933". The suit was dismissed for want of jurisdiction, but the opinion shows clearly that its main purpose was the same as the instant proceedings, though in that case the attack was direct, while here it is indirect.

■ The interpretation of the Commission's findings is not, however, confined to claims growing out of the present controversy. In Capital Grain & Feed Co. v. Illinois Central R. Co., 118 I. C. C. 732, the Commission denied reparation on prior shipments on a finding that rates "are and for the future will be" unreasonable, and on petition for mandamus this court sustained the Commission's refusal. Interstate Commerce Comm. v. United States ex rel. Capital Grain & Feed Co., 59 App.D.C. 118, 35 F.2d 1012. And in Traffic Bureau of Nashville v. Louisville & Nashville R. Co., 118 I. C. C. 748; Birmingham Traffic Bureau v. St. Louis-San Francisco Ry. Co., 118 I. C. C. 756; and General Motors Corp. v. Alton R. Co., 215 I. C. C. 225, the Commission in each case so construed the phrase we have mentioned. Indeed, an examination of the Commission's reports shows clearly that when the Commission intends to award reparation it uses the words *"were unreasonable"* and when it does not, it uses the words *"are and for the future will be unreasonable"*. This it may do because of its dual jurisdiction—the administrative jurisdiction to provide a rule for the future and the judicial or quasi-judicial jurisdiction to give reparation for the past. See Interstate Commerce Comm. v. United States ex rel. Campbell, 289 U.S. 385, 388, 53 S.Ct. 607, 77 L.Ed. 1273.

It is quite plain that the 120 per cent rate was also the measure of "reasonableness" between March 3, 1933, and December 28, 1933; for although the full Commission made no specific finding for this period, it affirmed Division 5 "as to all issues which are not covered by the foregoing findings", and for that period Division 5 had fixed the rates at 120 per cent. The Railway Express had complied with the order, and the shippers paid no more than the rates found reasonable for that time. In these conditions, it is at least doubtful if the Commission could validly have awarded reparation. Arizona Grocery Co. v. Atchison, T. & S. F. R. Co., 284 U.S. 370, 52 S.Ct. 183, 76 L.Ed. 348. In any case, it is clear the Commission did not award reparation, and it is equally clear we have no power to compel it to do so. Interstate Com-

merce Comm. v. United States ex rel. Waste Merchants' Ass'n, 260 U.S. 32, 43 S.Ct. 6, 67 L.Ed. 112; Interstate Commerce Comm. v. United States ex rel. Capital Grain & Feed Co., 59 App.D.C. 118, 35 F.2d 1012. Cf. Standard Oil Company v. United States, 283 U.S. 235, 51 S.Ct. 429, 75 L.Ed. 999.

 What has been said so far is directed to the challenged express rates, but applies equally to the refrigeration charges. The Commission in its first decision found these charges reasonable. The effect of this was to validate them to the period of reargument. Upon reargument (Burch v. Railway Express Agency, 197 I. C. C. 85) the Commission modified the earlier decision by establishing the 85 per cent rate—but only *for the future*. Petitioners argue that as to the 85 per cent rate there is no differentiation involving the date of the Commission's finding and the prior period and that therefore the use of the phrase "are and for the future will be" is without point. The argument overlooks the distinction between the administrative and judicial functions of the Commission to which we have referred. The question is not whether the 85 per cent basis should have been made effective from an earlier date, but rather whether it was in fact made effective; and since it is clear that the Commission was speaking of the future rather than the past, it is idle for petitioners to say in one breath that they do not seek a different award and in the next to ask us so to construe the language of the Commission as to require a different award from that made. Without regard to any opinion of our own on the subject, it is clear that this would be an assumption of jurisdiction which we do not possess. See Baltimore & Ohio R. Co. v. Brady, 288 U.S. 448, 53 S.Ct. 441, 77 L.Ed. 888. The Commission—and we state it again in the interest of clarity—in its final decision in this case (Wishnatzki & Nathel v. Railway Express Agency, 226 I. C. C. 637, March 11, 1938) awarded reparation (1) on all charges paid on shipments prior to March 3, 1933, on the 120 per cent basis, which it had twice found to be reasonable as to that period; (2) awarded reparation on the same basis on shipments between March 3, 1933, and December 28, 1933, for the reason that it had approved these rates for shipments in that period, and the Agency in exacting them had only followed its mandate; (3) awarded reparation for shipments between December 28, 1933, and March 18, 1934, on the 105 per cent basis and 85 per cent refrigeration charge basis prescribed for the future in its decision of November 7, 1933, and it allowed interest on these amounts except for the period during which the shipper delayed settlement and payment by unsuccessful litigation in the courts.

The Commission explains the denial of interest in its final report, to be found in 226 I. C. C. at page 641. There it says that the Agency contended it should not pay interest during the period of proceedings in the New York Federal Courts inasmuch as it had offered in open court to pay reparation in accordance with the Commission's decision and stood at all times ready, willing, and able to discharge its obligations as determined by the Commission. The Commission rejected this defense because it found the offer did not apply specifically to the shippers concerned in this suit, though the latter were in fact included in the order the Agency agreed to. The Commission, however, held that since petitioners here had, after electing to apply for relief to the Commission, abandoned the proceedings and unsuccessfully prosecuted them in the courts without right and in the teeth of the statute (Section 9, Interstate Commerce Act, 49 U. S.C.A. § 9), which made the election final, they ought not to be allowed to penalize the Agency which had been thus improperly required to expend large sums in its defense.

 We think the reason is a valid one, and consider the discretion imposed by statute on the Commission in this respect not subject to alteration, at least by mandamus. The finding in the Commission's report, it is true, awarded interest, but it stated also that the shippers "should comply with Rule V of the Rules of Practice". Rule V requires the shipper to prepare schedules of payments immediately and present them to the carriers for certification. The finding was made on November 7, 1933, but the schedules were not made out and presented for certification until July 23, 1936. Under these circumstances the denial of interest for twenty-one months was well within the Commission's discretion. See Louisville & Nashville R. Co. v. Sloss-Sheffield Steel & Iron Co., 269 U.S. 217, 46 S. Ct. 73, 70 L.Ed. 242; Interstate Commerce Comm. v. United States ex rel. Capital Grain & Feed Co., 59 App.D.C. 118, 35 F.2d 1012. This leaves for consideration only the question whether the Commission's decision establishing the rates was so arbitrary as to require correction.

We find nothing arbitrary or capricious in the Commission's report. In this regard, counsel for shippers say the finding that prior to March 3, 1933, the assailed rates were unreasonable to the extent that they exceeded 120 per cent, and that thereafter they were unreasonable to the extent that they exceeded 105 per cent, is a mere arbitrary conclusion unsupported by evidence and, therefore, mere surplusage. In this view, they say the conclusion should be disregarded and the finding on the basis of 105 per cent should be considered as applicable to both periods. Reliance is placed on United States v. Chicago M. St. P. & P. R. Co., 294 U.S. 499, 55 S.Ct. 462, 79 L.Ed. 1023, but the facts there and here are different. In that case the Commission's report was based upon an illegal premise, that is to say, it found the proposed rates unreasonable because they would lead to a rate war—a matter outside the Commission's jurisdiction or power to control. In the present case the Commission in its first report (Burch v. Railway Express Agency, 190 I. C. C. 520) reviewed the history of the express transportation service for strawberries from south to north, the former inadequacy of the service, the steps taken at the instance of the Commission for its improvement, the increase in the use of the service, the rates then in existence in other parts of the south as compared with Florida, the cost of the service to the carriers and, in fact, every element which properly could enter into a fair computation; and, considering all of the elements, reached the conclusion that a proper rate was 120 per cent of the first-class rates. Upon reargument, the Commission (197 I. C. C. 85) affirmed its former decision as applicable to the period prior to 1933 but fixed the rate at 105· per cent for the future. It justified the change apparently upon comparisons with express rates in effect from southern origins in or ˙ adjacent to the Mississippi Valley. But in any case it is perfectly clear it exercised its discretion after a full hearing and upon voluminous evidence.

The November 7th report of the Commission may be subject to the criticism that no particular facts are stressed to explain the reason for the difference in rates in the past and in the future. But the findings, so far as they applied to the past, were made, not for the purpose of fixing rates, but solely to measure reparation. There was nothing arbitrary in this, since the Commission is not required to award reparation on the same basis used for future rates. We have seen that the Commission often fixes a new rate without granting any reparation. In this case it has granted reparation, but not to the full extent of the new rates. Many factors may have entered into this finding. Suffice it to say that, with the facts before it, the Commission found that the shippers were not entitled to the damages now claimed. As the Supreme Court said in a similar case: "One has only to read the opinions in Pennsylvania R. Co. v. International Coal Co. [230 U.S. 184, 33´ S.Ct. 893, 57 L.Ed. 1446, Ann.Cas.1915A, 315], supra, and the cases that have followed it, to see how much the rule of damages is beset by delicate distinctions, how pre-eminently in applying it there is a call upon the judge to think and act judicially, to use judgment and discretion. Errors of law in the discharge of a function essentially judicial are not subject to be corrected through the writ of mandamus any more than errors of fact." Interstate Commerce Comm. v. United States ex rel. Campbell, 289 U.S. 385, 393, 53 S.Ct. 607, 611, 77 L.Ed. 1273.

In the instant case it should be remembered that petitioners ground their right to reversal solely on the claim that the Commission's findings or determinations, properly construed, entitled them to reparation in the amounts sued for. Enough has been said to show that the claim in that respect is unfounded, and on that ground we affirm the judgment of the District Court.

Affirmed.