**THOMSON PHOSPHATE COMPANY,**
Plaintiff,
v.
**ATLANTIC COAST LINE R. CO. et al.,**
Defendants.

**ATLANTIC COAST LINE R. CO. et al.,**
Cross-Plaintiffs,
v.
**UNITED STATES of America and Interstate Commerce Commission,**
Cross-Defendants.
No. 62 Civ. 2911.

United States District Court
S. D. New York.
April 1, 1968.

---

Harry Teichner, Brooklyn, N. Y., for plaintiff.

J. Edgar McDonald, New York City, for defendants and cross-plaintiffs.

Robert M. Morgenthau, U. S. Atty. for Southern Dist. of New York, for United States, by Michael Hess, Asst. U. S. Atty., New York City.

Robert W. Ginnane Gen. Counsel, for Interstate Commerce Commission, by Nahum Litt, Atty., Interstate Commerce Commission, Washington, D. C.

MANSFIELD, District Judge.

Defendants ("Railroads" herein) move for summary judgment setting aside a reparation order of the Interstate Commerce Commission, Dkt. No. 32065, Thomson Phosphate Co. v. Atlantic Coast Line R. R., 303 I.C.C. 25 (Div. 2, 1958), 311 I.C.C. 315 (Div. 3, 1960), awarding plaintiff Thomson Phosphate Co. ("Thomson" herein) $8,889.76 with interest on account of unjust and unreasonable rates assessed on about 636 shipments of ground phosphate rock moved to more than 100 destinations in Illinois during the period from April, 1945 to December, 1950.

This action began on August 22, 1962, as a suit by Thomson against the Railroads to enforce the Commission's reparation order. By stipulation it was held in abeyance pending the determination of an action brought by the Railroads against the Government and the Commission on September 6, 1961 in the District Court for the Middle District of Florida to review the Commission's order. A decision by that court in favor of the Railroads upholding their defense of statute of limitations, 213 F.Supp. 199 (1963), appealed solely on the ground of lack of jurisdiction, 334 F.2d 46 (5th Cir. 1964), was ultimately reversed on this ground by the Supreme Court, which held that the Railroads could seek review in this Court where Thomson's enforcement action was pending. 383 U.S. 576, 86 S.Ct. 1000, 16 L.Ed.2d 109 (1966). On May 21, 1967 a separate cross-complaint filed in this Court by the Railroads was consolidated with the enforcement action brought by Thomson. 41 F.R.D. 522 (1967). By stipulation the disposition of Thomson's enforcement action will be governed by the outcome of the Railroads' cross-petition for review of the Commission's order.

The Railroads urge on this motion, for summary judgment that the Commission erred in not finding Thomson's claims barred by the two-year statute of limitations in § 16(3) of the Interstate Commerce Act, 49 U.S.C.A. § 16(3) (1964 ed.) [1] because various defects in informal complaint procedure under I.C.C. Rule 25, 49 C.F.R. § 1.25, render inapplicable subdivision (f) of that Rule (Rule 25 (f)), which provides that upon the termination of an informal proceeding, a complainant has six months within which either to file a formal complaint or resubmit an informal complaint on "an additional fact basis" and that such filing or resubmission will be deemed to relate back to the date of original filing.[2]

The Commission opposes on the grounds that its interpretation of its Rule 25, being neither arbitrary nor clearly erroneous, is controlling, see Bowles v. Seminole Rock & Sand Co., 325 U.S. 410, 413–414, 65 S.Ct. 1215, 89 L.Ed. 1700 (1945), and that its findings and conclusions are supported by substantial evidence.

On May 20, 1946, Thomson filed Informal Complaint 174417 ("Informal Complaint" herein) alleging that rates on ground phosphate rock from Prairie, Florida to all stations in Illinois during the previous two years were unjust and

---

1. "(b) All complaints against carriers subject to this chapter for the recovery of damages not based on overcharges shall be filed with the commission within two years from the time the cause of action accrues, and not after, subject to subdivision (d) of this paragraph."

2. "(f) *Six month's rule.* If an informal complaint seeking damages cannot be disposed of informally, or is denied, or is withdrawn by complainant from further consideration, the parties affected will be so notified in writing by the Commission. The matter in such complaint will not be reconsidered unless, within six months after the date such notice is mailed, either a formal complaint as to such matter is filed, or it is informally resubmitted on an additional fact basis.

"Such filing or resubmission will be deemed to relate back to the date of the original filing * * *."

unreasonable. The purpose of the Commission's informal docket procedure is to reduce the burden of litigation involved in proceedings on the formal docket by providing for the negotiation and settlement of claims under Commission auspices. An informal complaint is processed by means of correspondence among the parties and the Commission staff, which can be handled by a shipper or carrier without the expense involved in a formal presentation to the Commission. The participation of the Commission staff in this process encourages the parties to make a diligent attempt to achieve a settlement, and agreement is reached in most cases.

By letter of December 4, 1947, Thomson took the position that the Informal Complaint was also to cover shipments during "the pendency of this proceeding." This position does not appear to have been controverted by the Railroads or questioned by the Commission.

On December 17, 1947, Atlantic Coast Line R. R. ("ACL" herein), the originating carrier, offered on behalf of the Railroads to pay reparations "on all shipments involved in this informal complaint [No. 174417] upon which the statute of limitations has not run." The Commission, thereupon issued an order on September 19, 1950, Special Docket 218792 ("1950 Special Docket award" herein), directing the Railroads to pay Thomson $13,012.51 as reparations for unreasonable charges on 185 shipments moved *during the period up to April 7, 1945.* Payment was made on November 17, 1950.

On December 7, 1950, Thomson acknowledged receipt of the reparations payment and requested reparations pursuant to its Informal Complaint for shipments which had moved *after* April 7, 1945. After further correspondence between the Secretary of the Commission and the parties, the Secretary, on June 26, 1952, advised Thomson that the Informal Complaint was closed as not susceptible of informal adjustment.

On October 14, 1952, within six months after the closing of the Informal Complaint, Thomson filed a formal complaint, No. 31124 ("1952 Formal Complaint" herein) for reparations on shipments to five destinations previously covered by the Informal Complaint and on December 19, 1952 requested the Commission to reopen the Informal Complaint with respect to remaining destinations to be held in abeyance pending disposition of the formal proceeding. By letter of December 24, 1952, this request was granted and "Informal Complaint 174414 [sic]" was reopened "as originally filed."

On the 1952 Formal Complaint, Thomson was awarded reparations of $1,463.-80, 291 I.C.C. 1, 293 I.C.C. 369, which was paid by the Railroads on October 3, 1955, accompanied by the statement that this was "payment in full of all matters involved in Informal Complaint 174417 and ICC Docket No. 31124 growing out of that informal complaint." In acknowledging receipt of payment, Thomson called attention to the pendency of the Informal Complaint with respect to shipments to remaining Illinois destinations and requested settlement of these claims.

On March 29, 1956, after further informal procedure proved unproductive, the Secretary of the Commission advised Thomson that the Informal Complaint was again declined. On March 31, 1956, Thomson requested reconsideration and on April 4, 1956, the Informal Complaint was again reopened. After further correspondence, it was again closed, for the last time, on April 19, 1956.

On October 16, less than six months after this last closing, but more than six months after the closing of March 29, 1956, Thomson filed Formal Complaint No. 32065 ("1956 Formal Complaint" herein) which is here in issue, covering shipments to the remaining Illinois destinations during the period from April 10, 1945 to December 31, 1950. On February 10, 1958, the Commission, Division 2, reversed a recommendation of the Hearing Examiner that the statute of limitations barred Thomson's claims and found the rates unjust and unreasonable, 303 I.C.C. 25. Further proceedings ensued to determine the amount of the

award and on September 28, 1960, the Commission, Division 2, Commissioner Walrath dissenting on the ground of the statute of limitations, followed the recommendation of the Hearing Examiner that Thomson be awarded $8,889.76 with interest. 311 I.C.C. 315.

The Railroads' cross-action to review the Commission's award of reparations on the 1956 Formal Complaint relies principally on the ground that the filing of that formal complaint was barred by the statute of limitations despite the six-month extension provided by Rule 25(f). The Railroads argue that Thomson's claims were not preserved by the pendency of the Informal Complaint because that complaint

> (1) was defective so that its filing on May 20, 1946 did not toll the running of the statute of limitations;
>
> (2) was extinguished by the 1950 Special Docket award and the failure of Thomson to take further action within six months as required by Rule 25(f);
>
> (3) was not properly reopened on December 24, 1952 so that the extension provided by Rule 25(f) expired six months after the Informal Complaint was closed on June 26, 1952;
>
> (4) was extinguished on October 3, 1955 when the Railroads paid the award in the 1952 Formal Complaint and no further action was taken by Thomson within six months as required by Rule 25(f);
>
> (5) was not properly reopened on April 4, 1956 so that the extension provided by Rule 25(f) expired six

months after the Informal Complaint was closed on March 29, 1956.

With regard to their statute of limitations defense, the Railroads also contend that the 1956 Formal Complaint was defective and therefore did not stop the running of the statute of limitations when it was filed on October 16, 1956.

The Railroads also maintain that Thomson lacked the capacity to collect reparations, that the rates charged were not unjust and unreasonable, and that the award of interest was improper.

### I. *The Statute of Limitations*

The Railroads contend that Thomson's claims, which are with respect to shipments between April 7, 1945 and December 31, 1950, are barred by the two-year statute of limitations because those claims were not properly asserted on May 20, 1946 by the Informal Complaint. In particular, the Railroads argue that the Informal Complaint did not describe the shipments in issue with "reasonable definiteness" as required by I.C.C. Rule 25(b).[3] The opinion of the Commission did not discuss this argument. However, the Court finds it without merit.

In Louisville & N. R. R. v. Sloss-Sheffield Steel & Iron Co., 269 U.S. 217, 46 S.Ct. 73, 70 L.Ed. 242 (1925) (Brandeis, J.), the Supreme Court said:

> "no statute or rule imposes upon the Commission procedure so exacting as to make fatal mere failure to present within the period of limitation the detail of a statement which under the procedure prevailing in courts of law

---

**3.** "(b) *Content.* An informal complaint seeking damages, when permitted under the act, must be filed within the statutory period, and should contain such data as will serve to identify with reasonable definiteness the shipments or transportation services in respect of which damages are sought. Such complaint should state: (1) that complainant makes claim for damages, (2) the name of each individual claimant seeking damages, (3) the names of defendants against which claim is made, (4) the commodities, the rate applied, the date when the charges were

paid, by whom paid, and by whom borne, (5) the period of time within which or the specific dates upon which the shipments were made, and the dates when they were delivered or tendered for delivery, (6) the points of origin and destination, either specifically or, where they are numerous, by definite indication of a defined territorial or rate group of the points of origin and destination and, if known, the routes of movement, and (7) the nature and amount of the injury sustained by each claimant."

may ordinarily be supplied by amendment or a bill of particulars. * * * [T]he contention of [the Railroad] would involve the adoption of a procedure contrary to the long-established practice of the Commission and would defeat the convenient and effective administration of the act." (269 U.S. at 227, 46 S.Ct. at 76)

See also Arcadia Mills v. Carolina, C. & O. Ry., 293 F. 639 (D.S.C. 1922). Furthermore,

"an informal complaint which informs a defendant of the nature of a claim, though couched in general terms and lacking specific details, is sufficient to stop the running of the statute, and we have so found in many cases." Vernon Lumber Corp. v. Atchison, T. & S. F. Ry., 279 I.C.C. 253, 262 (1950) (dissenting opinion).

See also Cicardi Bros. Fruit & Produce Co. v. Atlantic Coast Line R. R., 227 I.C.C. 67 (1938).

Thomson's Informal Complaint described the shipments involved with "reasonable definiteness" as required by Rule 25(b). It demanded damages on "carload shipments of ground phosphate rock from Prairie (Mulberry), Fla., to all stations in the State of Illinois during the past two years." A representative list of destinations and routes of movement was attached. The rate charged was specified together with a statement of its contention as to why that rate was unreasonable and what the basis for a proper rate was.

The Railroads suggest that the shipments involved were not specified by date and that the destination points were not individually listed. However, Rule 25 (b) (5) permits description by reference to a period of time as an alternative to specific dates, in accordance with which the Informal Complaint referred to shipments "during the past two years" and Thomson's letter of December 4, 1947 referred to subsequent shipments during "the pendency of this proceeding." As for the destination points, Rule 25(b) (6) does not require these to be individually listed where they are numerous, as

was the case here, and accordingly the Informal Complaint was accompanied by a representative list of destinations and routes of movement. Therefore, the Court concludes that the Informal Complaint was sufficiently definite, as required by Rule 25(b), to prevent the running of the statute of limitations after May 20, 1946 when it was filed.

The Railroads' next contention is that the Informal Complaint was extinguished by the 1950 Special Docket award and the failure of Thomson to take further action within six months as required by Rule 25(f). It was on this ground that the Hearing Examiner upheld the statute of limitations defense, saying

"the informal complaint, No. 174417, filed by complainant on May 20, 1946, became the subject of a compromise offer as made by defendants on December 19, 1947, and * * * such offer was accepted by complainant, without reservations, on January 20, 1948. The contract resulting was, in effect, approved by the Commission when it issued its order in Special Docket No. 218792 on September 19, 1950."

The Examiner then applied

"established principles of contract law that an offer in compromise when accepted results in a contract binding upon both parties, [and] that one cannot accept money offered in full settlement of a disputed claim and reject the conditions on which it is offered."

The Examiner thus found, apparently on the basis of evidence before him, including the record of compromise negotiations, that the Railroads' compromise offer was made and accepted in full settlement of all claims that could be the subject of the Informal Complaint, including those with respect to shipments made during the pendency of the proceedings, and that the "settlement in full" took the form of an award referring specifically to 185 pre-April 1945 shipments. Accordingly, he concluded that the Informal Complaint had ceased to exist more than six months before any further action was taken by Thomson

and therefore any claims of Thomson that may have survived the offer and compromise approved by the Commission in the 1950 Special Docket award were barred by the statute of limitations.

■ The Examiner's findings and conclusions must be taken into account in determining whether the Commission's decision is supported by substantial evidence, Universal Camera Corp. v. N.L. R.B., 340 U.S. 474, 493, 71 S.Ct. 456, 95 L.Ed. 456 (1951), although the power of decision belongs to the Commission and, if supported by substantial evidence on the record as a whole, its decision may not be upset merely because it is in conflict with the Examiner's report, especially where, as here, demeanor evidence is not particularly significant. See N.L. R.B. v. St. John's Associates Inc., 392 F. 2d 182 (2d Cir. March 25, 1968).

Neither Thomson nor the Commission point to any findings or basis, evidentiary or otherwise, supporting the Commission's reversal of the Examiner and its conclusion that the Informal Complaint remained pending with respect to shipments post-dating April 7, 1945. Although Division 3, in its decision disposing of the 1952 Formal Complaint referred to the Railroads' contention that the Informal Complaint was "completely disposed of by the order [1950 Special Docket award] on September 19, 1950," the Examiner observed:

"the report therein apparently fails to consider what effect, if any, the compromise agreement and special docket approval may have had upon the previously pending informal complaint."

■ After giving due weight to the Commission's authority to reverse the Examiner, this Court is forced to conclude that the record fails to reveal substantial evidence supporting the Commission's reversal and contrary conclusions. It may be that the Commission's reversal is supported by evidence to the effect that the 1950 compromise was limited to specific shipments so that the claims relating to shipments subsequent to April 7, 1945 survived. If so, such

evidence is not in the record before us. In view of the Examiner's contrary findings, the Court would be justified in inferring that the parties followed a procedure not unusual in the settlement of ordinary litigated claims, i. e., to enter into a compromise of all outstanding claims but provide that the settlement on the record would take the form of an order directing payment with respect to certain specific claims. In view of the fact that the informal procedure in effect results in the Commission's putting its imprimatur upon the form presented by the parties, the Examiner's finding that there was a full and complete settlement of all claims cannot be disregarded. Accordingly, in the absence of any findings by the Commission, the matter must be remanded to the Commission for determination of this basic issue.

■■ The Railroads further contend that even if the Informal Complaint was not extinguished by the 1950 Special Docket award, Thomson's claims were nevertheless barred by the statute of limitations because the Informal Complaint was closed on June 26, 1952 and not properly reopened within six months by the Commission's letter of December 24, 1952. In support of this contention they first argue that as to shipments subsequent to May 20, 1946, when the Informal Complaint was filed, Thomson's claims are barred because the Commission letter of December 24, 1952 reopened the Informal Complaint "as originally filed," and as filed on May 20, 1946 the Informal Complaint expressly referred only to shipments within two years prior to that date. However, the Informal Complaint "as originally filed" did not necessarily exclude shipments subsequent to May 20, 1946 because an award of reparations for shipments during the pendency of reparations proceedings may be made even in the absence of specific request for such relief. See Louisville & N. R. R. v. Sloss-Sheffield Steel & Iron Co., supra; Buckerfield's Ltd. v. Atchison, T. & S. F. Ry., 283 I.C.C. 614 (1951). Furthermore, Thomson's letter of December 4, 1947 made it clear that the Infor-

mal Complaint covered shipments during "the pendency of this proceeding," and the Railroad made no objection at that time to the inclusion of such shipments. Therefore, the phrase "as originally filed" in the reopening letter of 1952 was not intended to distinguish between shipments before and after May 20, 1946.

■ The Railroads' principal argument in support of their attack upon the 1952 reopening of the Informal Complaint is that there was no "additional fact basis" for such action as required by Rule 25(f). However, the "additional fact basis" upon which the Informal Complaint was reopened, after being closed on June 26, 1952 as not susceptible of informal adjustment, was that shortly thereafter, on October 14, 1952, Thomson had filed the 1952 Formal Complaint seeking reparations on shipments to five destinations previously involved in the Informal Complaint. Thomson requested reopening of the Informal Complaint with respect to shipments to remaining destinations so that those claims could be held in abeyance pending adjudication of the 1952 Formal Complaint which involved substantially similar shipments from the identical shipping point to contiguous destinations in the same state. Pendency of a formal complaint constitutes a sufficient basis to reopen because resolution of the issues in a formal proceeding will usually result in settlement of an informal proceeding involving substantially similar issues, cf. Charlottesville Woolen Mills v. Chesapeake & O. Ry., 222 I.C.C. 99 (1937); Nu-Shine Co. v. Baltimore & O. R. R. Co., 185 I.C.C. 608 (1932). However, the practice of holding some claims in abeyance pending the disposition of others has the disadvantage, so well illustrated by this case, that if the formal adjudication does not lead to settlement of the remaining informal claims, the adjudication of those remaining claims is unduly delayed.

■ The Railroads' next contention is that even if the reopening of the Informal Complaint on December 24, 1952 was proper, Thomson's claims held in abey-

ance in that proceeding were extinguished by the payment of $1,463.80 by the Railroads to Thomson accompanied by a letter representing that this was "payment in full of all matters involved in Informal Complaint 174417 and I.C.C. Docket No. 31124 growing out of that informal complaint." However, Thomson did not accept this payment as extinguishing the Informal Complaint but, in acknowledging receipt of payment, requested settlement of its claims with respect to shipments to remaining destinations under the Informal Complaint (from which the five destinations involved in the 1952 Formal Complaint had been excepted when the Informal Complaint was reopened). Therefore, the Railroads' argument that the payment of the sum awarded in the 1952 Formal Complaint extinguished Thomson's claims under the Informal Complaint (assuming it had not been settled in 1950) is without merit.

The Railroads' principal contention on this motion is that regardless of the disposition of the above issues, Thomson's claims were barred by the statute of limitations because after the refusal of the Railroads to settle the Informal Complaint, it was closed on March 29, 1956, and the 1956 Formal Complaint was not filed until October 16, 1956, more than six months later. Following the closing of March 29, however, the Informal Complaint was reopened from April 4 to April 19, 1956, when it was again closed, less than six months before the filing of the 1956 Formal Complaint. The Railroads argue that the reopening of the Informal Complaint on April 4 was improper because it was not supported by "an additional fact basis" as required by Rule 25(f) and therefore must be disregarded in determining whether Thomson's claims are barred.

The Informal Complaint had been closed on March 29, 1956 after letters dated March 13 and 26 from the Railroads (J. G. Middleton, ACL's general freight agent) indicated that in reliance on the statute of limitations and Rule 25(f) they were refusing to settle. The

basis for reopening the Informal Complaint on April 4 was a letter from Thomson's representative (Abner Pollack) to the Secretary of the Commission (Harold D. McCoy), requesting reconsideration and reopening. This letter noted that the Commission had apparently overlooked a letter from the Railroads dated October 27, 1955 indicating that they were reconsidering their refusal to settle, and urged the Commission to attempt to persuade the Railroads that their reliance on the statute of limitations and Rule 25 (f) was misplaced. It noted that formal proceedings should be unnecessary since the merits of Thomson's claims had virtually been decided in the 1952 Formal Complaint.

The Railroads' response to the reopening was a letter of April 6 (Urchie B. Ellis of ACL's Law Department) detailing their view that the Informal Complaint had not been properly reopened on December 24, 1952. A Commission letter of April 11 followed, expressing the "informal views" that the Informal Complaint was still alive. On April 16, the Railroads refused to reconsider and accordingly the Commission wrote Thomson on April 19 that the Informal Complaint was closed.

■■■■ In these circumstances, the Court cannot conclude that the Commission erred in rejecting the Railroads' contention that the reopening from April 4 to April 19 must be treated as a nullity, which would have the effect of barring the 1956 Formal Complaint, filed less than six months thereafter, particularly since the Commission's decision turns on its liberal rather than literal construction of the term "additional fact basis" in Rule 25(f), an interpretation of its own Rule which is entitled to great weight in the absence of a showing of arbitrariness or abuse of discretion. Bowles v. Seminole Rock & Sand Co., 325 U.S. 410, 413–414, 65 S.Ct. 1215, 89 L.Ed. 1700 (1945). The purpose of the requirement in Rule 25(f) that "an additional fact basis" be presented in a request to reopen is to indicate to the Commission staff that the heavy burden

of litigation may be avoided because there is a reasonable possibility that informal adjustment will be more successful than earlier efforts. Furthermore, after the Commission staff reopens, the complainant relies on that reopening to extend the statute of limitations under Rule 25(f). If the proceeding is later closed without compromise, the Commission expressly directs the complainant's attention again to Rule 25 (f), as was done here on April 19, 1956, thereby implying that the complainant has six months thereafter within which to file a formal complaint. LeTourneau-Westinghouse Co. v. Southern Ry., 299 I.C.C. 780 (1957); see also Purex Corp. v. Pennsylvania R. R., 277 I.C.C. 753 (1950); A. S. Nowlin & Co. v. Chesapeake & O. Ry., 213 I.C.C. 101, 121 (1935). Therefore unless the Commission staff has abused its discretion in determining that there is a reasonable possibility that a further attempt at informal adjustment may be successful, it would be unfair to the complainant to hold that its claims were barred by the statute of limitations because there was not a sufficient basis for reopening.

■■■■ No such abuse of discretion appears here. Pollack's letter presented to the Commission's staff the peculiar circumstances of this case, that the merits of Thomson's claims had already been adjudicated in the 1952 Formal Complaint, that the Railroads were relying solely on the statute of limitations, that the closing of March 29 had been based on the mere assertion by the Railroads of this defense without any supporting details, and that the Commission's letter of March 29 had implied that it was the Commission's informal view that the Railroads' reliance on the statute of limitations was misplaced. Cf. Southland Co. v. Southern Ry., 300 I.C.C. 9 (1957). This presentation persuaded the staff that there was a reasonable possibility that, upon reopening, the Railroads might be moved by an explicit statement of the Commission's "informal views" to abandon this defense, thus permitting settlement. The staff reopened the Informal

Complaint and, despite the Railroads' lengthy statement in response, attempted to induce settlement by informing the Railroads of its informal view that the statute of limitations defense lacked merit. When this failed, the Commission promptly closed the informal proceeding on April 19, 15 days after its reopening, directing Thomson's attention to Rule 25(f). In reliance on the latter's six-month provision, Thomson filed its 1956 Formal Complaint within six months. Accordingly, the Court agrees with the Commission that the beginning of the six-month extension provided by Rule 25(f) must be measured from the final closing letter of April 19, 1956.

 The Railroads further contend that the 1956 Formal Complaint was not sufficiently definite to bar the running of the statute of limitations. However, the requirements for formal and informal complaints are the same, see I.C.C. Rule 29,[4] and since the formal complaint here referred to the Informal Complaint, which complied with Rule 25(b), the 1956 Formal Complaint was sufficiently definite.

 The Railroads' next contention, that the 1956 Formal Complaint was defective because it was not signed and verified by an executive officer of Thomson as required by I.C.C. Rule 17(b), must be rejected for the reason that it is undisputed that it was signed by Pollack, Thomson's representative, as required by Rule 17(a), which would render defects under Rule 17(b) immaterial.[5]

4. "A formal complaint that includes a request for an award of damages should contain the information specified for an informal complaint seeking damages (Sec. 1.25, paragraphs (b) and (c)).

5. Rule 17 provides:
"Sec. 1.17 *Attestation and verification.*
"(a) *Practitioner's signature.* If a party is represented by a practitioner each pleading, document, or paper of such party shall be signed in ink by one such practitioner whose address shall be stated. * * * A pleading document, or paper thus signed need not be verified or ac-

## II. *Thomson's Capacity*

As a second line of attack, the Railroads argue that the remainder of Thomson's claims are barred because in September, 1951 Thomson, an Illinois corporation, was acquired by International Minerals and Chemical Co. ("International" herein) and did not file the 1956 Formal Complaint until five years thereafter. Smith-Hurd Ill.Annot.Stat. Ch. 32, § 157.94 provided:

"The dissolution of a corporation * * * shall not take away or impair any remedy available to or against such corporation, its directors, or shareholders, for any right or claim existing, or any liability incurred, prior to such dissolution if action or other proceeding thereon is commenced within two years after the date of such dissolution."

This provision was at issue in Chicago Title & Trust Co. v. Forty-One Thirty-Six Wilcox Bldg. Corp., 302 U.S. 120, 58 S.Ct. 125, 82 L.Ed. 147 (1937), where the Supreme Court said:

"The state law permits such proceedings to be instituted on behalf of a dissolved corporation within two years * * *. After two years, no proceedings may be *initiated* on behalf of the corporation in either state or federal courts, but such proceedings as have been instituted during that period in any of these courts may be prosecuted to completion." (302 U.S. at 128–129, 58 S.Ct. at 129)

Since § 157.94 does not set any time limit with respect to proceedings pending at

companied by affidavit except as otherwise provided * * *.
"(b) *When no practitioner's signature.* A pleading, document, or paper not signed by a practitioner must be signed in ink, the address of the signer shall be stated, and the facts alleged in a pleading must be verified under oath by the person in whose behalf it is filed. * * * A pleading, document or paper filed on behalf of a corporation * * * which is not signed by a practitioner must be signed in ink, and the facts alleged in a pleading must be verified by an executive officer of such corporation * * *."

the time of dissolution, and since the Informal Complaint was pending at the time of dissolution, the question is whether the Commission was correct in holding that the 1956 Formal Complaint "may be considered as one phase of a proceeding which was commenced by the filing of informal complaint No. 174417 before the dissolution" of Thomson. 303 I.C.C. at 29.

The Railroads contend that an informal complaint is not a "proceeding" and that, therefore, there was no "proceeding" pending at the time of dissolution in September 1951, so that the two-year limit fixed by § 157.94 expired before the 1956 Formal Complaint was filed; and that even if the Informal Complaint was a "proceeding" pending at the time of dissolution, the 1956 Formal Complaint was a "new" proceeding and therefore time-barred. We conclude, however, that an informal complaint is a pending "proceeding" for the purposes of § 157.94 and that a formal complaint covering the same subject matter is the "same proceeding." Although a formal complaint is filed under a new docket number, it is essentially a continuation of its predecessor informal complaint. Both types of complaints require the same information to state a "cause of action." I.C.C. Rules 25(b), 29. The informal complaint is essentially a means of attempting settlement under Commission authorization; if the attempt fails, the matter proceeds to formal adjudication. The fact that such procedural "escalation" from the stage of supervised settlement to adjudication involves an additional filing by the complainant does not alter the essential identity.

The Railroads further contend that upon its being acquired in September 1951 by International, Thomson lacked capacity as a party to file the 1956 Formal Complaint. The Commission rejected this contention, apparently on the basis of a statement by M. C. Boyle, President of Thomson, that the agreement for acquisition expressly reserved to Thomson's stockholders the right to recover reparations on the shipments in issue. However, Paragraph 7 of that agreement reserved to Thomson's stockholders only the right to assert freight charge claims with respect to shipments between January 1, 1948 and December 31, 1950. Therefore, the Commission was in error in finding that Thomson retained an interest in claims as to shipments prior to January 1, 1948 and in awarding reparations to Thomson as to such shipments.

The Railroads' additional contention that Thomson cannot collect reparations because it did not pay or bear the freight charges but was merely a broker, must be rejected for the reason that the Commission's contrary finding, approving that of the Examiner, appears supported by substantial evidence. See 303 I.C.C. at 28–29.

III. *The Rates; Interest*

The Railroads' final line of attack is that, on the merits, the Commission erred in concluding, in accord with its previous decision in the 1952 Formal Complaint, 291 I.C.C. 1, that the rates charged were unjust and unreasonable. The Railroads claim that this previous decision was in error because of "the differences of transportation characteristics between the shipments in 291 I.C.C. 1 * * * as compared with the shipments in Diamond, 256 I.C.C. 747, 259 I.C.C. 75, and Armour, 268 I.C.C. 502 * * *." (Pet. of March 27, 1958 at pp. 36–37). In the absence of a more particularized statement of the Railroads' claim that the Commission erred in this respect, the Court concludes that the Commission's finding was supported by substantial evidence.

However, the award of interest for the entire period, a matter within the Commission's discretion, see George Allison & Co. v. I.C.C., 70 App. D.C. 375, 107 F.2d 180 (1939), must be modified in view of the extreme delay in proceeding with this litigation, for which Thomson is at least partially responsible in that it appears to have handled its

claims in a piecemeal and dilatory fashion. The Court concludes that it was an abuse of discretion for the Commission to award interest for the period prior to the filing of Formal Complaint 32065 on October 16, 1956.

### Conclusion

If this 20-year old case is an illustration of the delays attending invocation of the informal, formal and appeal procedure within the administrative framework established by the Commission, it indicates that something is basically wrong and that the system is woefully in need of a major overhaul. Laudable as the objectives of some of these procedures may appear to be on the surface (e. g., use of the informal complaint to avoid expense involved in formal presentation), their apparent advantages appear to be outweighed by the development of a cumbersome administrative quagmire bordering on the moribund. Even after allowing for the time wasted during the past few years on procedural sparring in the courts, the almost endless labyrinth of delaying steps invoked by the parties before the Commission would make Jarndyce v. Jarndyce (Charles Dickens' Bleak House) seem like a summary judgment procedure. But the parties must not be penalized for having exploited this costive system with its administrative delays. The remedy lies elsewhere. See Friendly, A Look at the Federal Administrative Agencies, 60 Colum.L.Rev. 429 (1960); Tucker, Renovating the Decisional Process in an Independent Regulatory Commission, XXXV I.C.C. Practitioner's Journal 207 at 208 (Jan. 1968).

Accordingly, partial summary judgment in favor of the Railroads is granted with respect to reparations awarded for shipments prior to January 1, 1948 and with respect to interest awarded for the period prior to October 16, 1956, as to which items the order of the Commission is hereby modified, and as so modified the case is remanded to the Commission for determination of whether the compromise agreement and payment of $13,071.98 by the Railroads pursuant to the 1950 Special Docket award (No. 218792) constituted full settlement of the claims here under review.

Settle order.