**COTONIFICIO BUSTESE, S. A. v. MOR-GENTHAU, Secretary of the Treasury, et al.**

No. 7682.

United States Court of Appeals for the District of Columbia.

Decided April 28, 1941.

Dean Hill Stanley, of Washington, D. C., and Thomas M. Lane, of New York City, for appellant.

Edward M. Curran, U. S. Atty., and John L. Laskey, Asst. U. S. Atty., both of Washington, D. C., for appellee.

Before GRONER, Chief Justice, and VINSON, and RUTLEDGE, Associate Justices.

RUTLEDGE, Associate Justice.

Appellant sought below an order directing the Secretary of the Treasury to reconsider a petition for remission or mitigation of a customs exaction, alleged to be a "penalty" within the meaning of 19 U.S. C.A. § 1618. The Secretary had held that the exaction was a "duty," not a "penalty," and therefore that he had no authority under the statute to remit or mitigate it. Accordingly, he refused to consider or determine whether the circumstances stated in the petition would justify relief if a penalty were involved. The District Court sustained the Secretary's position and dismissed the complaint.

The Tariff Act of 1930 requires imported articles or their containers to be marked so as to indicate the country of origin. 19 U.S.C.A. § 1304 (a). Section 1304 (b), entitled "Additional duties for failure to mark," provides: "If at the time of importation any article or its container is not marked, stamped, branded, or labeled in ac-

cordance with the requirements of this section, there shall be levied, collected, and paid on such article, unless exported under customs supervision, a duty of 10 per centum of the value of such article, in addition to any other duty imposed by law, or, if such article is free of duty, there shall be levied, collected, and paid a duty of 10 per centum of the value thereof."

In 1935 and 1936, appellant, an Italian corporation, imported Italian raw silk valued at $691,068 and entered it at the New York customs house. Because the country of origin was not marked on the containers as the statute required, the collector assessed a "duty of 10 per centum of the value" pursuant to Section 1304 (b). Before paying the "duty," appellant filed a petition with the Secretary seeking remission or mitigation pursuant to 19 U.S. C.A. § 1618, which, as far as is material, follows: "Whenever any person * * * who has incurred, or is alleged to have incurred, any fine or penalty [under the provisions of this chapter], files with the Secretary of the Treasury * * * before the sale of such * * * merchandise[1] * * * a petition for the remission or mitigation of such fine, penalty, or forfeiture, the Secretary of the Treasury * * * if he finds that such fine, penalty, or forfeiture was incurred without willful negligence or without any intention on the part of the petitioner to defraud the revenue or to violate the law, or finds the existence of such mitigating circumstances as to justify the remission or mitigation of such fine, penalty, or forfeiture, may remit or mitigate the same upon such terms and conditions as he deems reasonable and just, or order discontinuance of any prosecution relating thereto."

The petition set forth facts to show that the failure to mark the containers was without willful negligence or intention to defraud the revenue or violate the law, and that mitigating circumstances existed to justify remission or mitigation.[2] The Secretary refused to consider whether appellant excusably neglected to mark the goods, holding that the exaction was a "duty," as it is denominated in Section 1304 (b), and not a "penalty" within Section 1618. The collector then liquidated the

---

[1] This "sale" evidently is the condemnation sale authorized by 19 U.S.C.A. § 1610.

[2] It was stated at the hearing that the importer attempted to comply with the law, but the Italian workmen who undertook to mark the goods, apparently from lack of ability to read the words, used a stamp reading "Use no hooks" rather than "Made in Italy."

entries, formally levying and assessing the 10% exaction. Appellant thereafter filed statutory protests, apparently under 19 U. S.C.A. § 1514, the last on March 13, 1937. The record does not show whether it took further action before the collector or the Customs Court. The complaint herein was filed September 29, 1939.

Appellant asserts that, in holding the exaction to be a duty rather than a penalty, the Secretary erroneously held himself to be without power or jurisdiction, and thus failed to exercise his discretion which, it is said, extends only to whether the claim should be granted, not to whether it is of the type which under some circumstances could be granted. It contends: (1) that the exaction was a penalty within Section 1618; (2) that whether it was such presented a question of the Secretary's "jurisdiction," rather than one of his discretion under the act; (3) that his erroneous decision of it is reviewable judicially; and (4) that it affords an appropriate occasion for judicial relief in the nature of mandamus.

On the contrary, appellee says no question of "jurisdiction" is presented. Whether the exaction is a duty or a penalty, he asserts, is one of the questions which the Act commits to his discretion, as is the further one whether there are mitigating circumstances to justify giving relief. Since he has determined the former adversely to the appellant's view, he contends that it became unnecessary to consider the petition further and his decision became final and conclusive upon the parties and the courts. The present suit, therefore, he characterizes as an effort to secure relief in the nature of mandamus as to an issue which the statute commits exclusively to his discretion and an attempt to interfere with the performance of an executive function. His decision, it is said, constituted action and decision upon appellant's petition, not a refusal to act upon and decide the matter. Finally, the Secretary contends that the exaction was in legal effect a duty and not a penalty.

Concededly, the exercise of the Secretary's discretion under the statute is not subject to control by mandamus. When a penalty is involved, the question whether mitigating circumstances existed and therefore whether relief shall be given is dis-

cretionary.[3] If the question whether the exaction was a penalty likewise is within appellee's discretion or whether so or not, if he determined it correctly, the appellant is not entitled to relief.

■ But where an administrator erroneously holds himself to be without power to consider a claim, relief in the nature of mandamus generally may be given. Roberts v. United States ex rel. Valentine, 1900, 176 U.S. 221, 20 S.Ct. 376, 44 L.Ed. 443; Interstate Commerce Commission v. United States ex rel. Humbolt S. S. Co., 1912, 224 U.S. 474, 32 S.Ct. 556, 56 L.Ed. 849; United States ex rel. Louisville Cement Co. v. Interstate Commerce Commission, 1918, 246 U.S. 638, 38 S.Ct. 408, 62 L.Ed. 914. Appellant relies principally upon these cases and Helwig v. United States, 1903, 188 U.S. 605, 23 S.Ct. 427, 47 L.Ed. 614.

In the latter a statute conferred jurisdiction upon the circuit court of all suits relating to revenue from imports or tonnage, except those for penalties or forfeitures, as to which the District Court was given exclusive jurisdiction. A suit was instituted in the circuit court to recover a "further sum" or an "additional duty" imposed because the appraised value of the goods exceeded the declared value by the specified margin. The court held the exaction to be a penalty and the suit therefore beyond the circuit court's jurisdiction.

The case differs from the present one in that no question of administrative jurisdiction or of judicial power to define it was involved. The issue related to mutually exclusive jurisdiction of courts, which the statutes posited explicitly upon the penal character of the exaction. The only question was whether it constituted a penalty in legal effect, although defined in terms of a "further sum" and an "additional duty." There was no issue as to the jurisdictional nature and effect of the decision of that question when made. Here both questions are presented. The Helwig case does not conclude the question whether, in the present setting and for present purposes, the existence or nonexistence of a penalty raises a jurisdictional or a discretionary issue; nor do the other authorities relied upon by appellant and cited above. They decide merely that relief in

[3] See United States ex rel. Heller & Co. v. Mellon, 1930, 59 App.D.C. 296, 40 F. 2d 808, certiorari denied, 1930, 281 U.S. 766, 50 S.Ct. 465, 74 L.Ed. 1174; General Finance Co. v. United States, 5 Cir., 1930, 45 F.2d 380.

the nature of mandamus may be given when an administrator decides erroneously a question which is jurisdictional and the effect is to prevent him from considering the merits or exercising his discretion.

■ Whether, for purposes of relief by mandamus against an administrative decision, a particular question presents an issue of administrative jurisdiction or a discretionary one is not ascertainable from exact criteria. That the question arises at the threshold of the administrator's duties, Commissioner of Patents v. Whiteley, 1866, 4 Wall 522, 18 L.Ed. 335; that it requires interpretation of a statute as well as consideration of facts, Roberts v. United States ex rel. Valentine, 1900, 176 U.S. 221, 20 S. Ct. 376, 44 L.Ed. 443; Carlisle v. United States ex rel. Waters, 1896, 7 App.D.C. 517; that in other contexts it might, or even normally would, bear upon the merits rather than the existence of power, United States ex rel. Louisville Cement Co. v. Interstate Commerce Commission, 1918, 246 U.S. 638, 38 S.Ct. 408, 62 L.Ed. 914;[4] that its decision effectively disposes of the entire matter and prevents consideration of facts which, except for its presence, might require a different result, Carlisle v. United States ex rel. Waters, supra; that even a high decree of judgment may be required in making it, Roberts v. United States ex rel. Valentine, supra; and that judicial decision of the issue may determine the character of the decision which the administrator must make when the case is returned to him, United States ex rel. Louisville Cement Co. v. Interstate Commerce Commission, supra, are not conclusive considerations. The ultimate question is whether Congress intended to bring the particular issue within the administrator's discretion or to posit its exercise as to other matters upon the existence of one of the alternatives which it presents. When the statute does not explicitly declare the congressional intent, as it did in the Helwig case, there is no rule of thumb by which it may be found. When the issue arises not only from the statute or section which confers the administrator's power, but also, as here, from the language of other statutes or sections taken in conjunction with the former, account must be had of all the pertinent provisions, their interrelations, and of the effect which the determination may have upon any general scheme of legislation and administrative action of which they are part.

■ As the case has been presented, we think that, for purposes of applying Section 1618, the question whether a particular customs exaction is a penalty is one not committed to the Secretary's discretion. The section confines his power of remission to fines, penalties and forfeitures. Other exactions fall without it. Unless his authority is so confined, either there is no limit to it or he has none whatever. Clearly Congress did not intend him to have power to remit all customs exactions. That it knows how to express such all-inclusive purpose is shown elsewhere in the customs legislation, as in Section 1514 (19 U.S.C.A.) where the wording specifies "all exactions of whatever character." It is equally clear, from the very grant of the power to remit, that Congress intended the Secretary to have some authority. No other boundary is drawn. No other reasonably may be implied. The other conditions of the section, namely, absence of willful negligence or intention to defraud the revenue or violate the law, or presence of mitigating circumstances, clearly fall within the discretion given. They go to the merits, not to the existence of power. If, therefore, a limit is to be found, it must be in the existence of a fine, penalty or forfeiture. Admittedly there is a line of demarcation between these and other exactions in the nature of duties, a line generally boldy drawn though in places it is thin and almost arbitrary.

Nor is it an answer to this view that, in limine, the Secretary must decide the question when it is raised on the petition. That is merely a necessary consequence of the limited character of his discretion. Before it can be brought into play, the basis for its exercise must be found to exist. We cannot accept the view, therefore, that the Secretary's decision that the exaction was a duty, not a penalty, was one within his discretion so that it was conclusive upon the courts under the authorities to which we have referred.

■ The question whether the exaction in question is a duty or a penalty presents greater difficulty. On the one hand, Helwig v. United States, supra, is

---

[4] Holding that a provision prescribing a period of two years for action by the Commission was jurisdictional, not merely a statute of limitations.

persuasive that it was a penalty.[5] There, as here, the imposition was in terms of "duty," "additional duty," "further sum," not of "fine," "penalty" or "forfeiture." The name by which the exaction was called was held not conclusive. A penalty, like a rose, by any other name, smells just as sweet—or sour. Penal effect was the controlling factor. The exaction in the Helwig case was imposed because the appraised value exceeded the declared value by the specified margin. The excess in such a case could be entirely innocent or the result of intentional undervaluation by the importer. The case did not distinguish the two situations. On the contrary, it regarded the distinction as immaterial. Likewise, the failure to mark in the present case might be either accidental or intentional. The penal character of the exaction becomes the more obvious when it is imposed for intentional failure to comply with the statute's requirements or for an attempt to defraud the revenue or violate the law, but within the principle of the Helwig case absence of such intention does not prevent the exaction's having penal quality. In fact, this gives its imposition even harsher effect.

It is argued that Section 1304 (b) creates a regulation for the classification of merchandise, dependent upon the condition of the goods at the time of import, and therefore that the exaction is not penal in character. Decisions of the Court of Customs and Patent Appeals are cited to sustain this view.[6] Apart from the effect of these decisions, the argument assumes that the condition of the goods at the time of import rather than the act of the importer in failing to mark at the point of origin is the basis for the imposition. In effect, it requires for purposes of determining whether Section 1618 is applicable that regard be had only to the condition and not to its cause. On the other hand, appellant argues that the two cannot be separated, that the condition of the goods when imported is due directly to the act of the importer in failing to mark at the point of origin, and that therefore the exaction in reality penalizes that act. That of course is the practical consequence. Whatever may be true with reference to other phases of customs administration, it seems a narrow and technical distinction for purposes of applying Section 1618 to look only at the condition of the goods when imported without reference to the act which immediately produces that condition. Doubtless Congress might make that distinction, in fact has done so in the amendment to Section 1304 (b) to which we shall refer; but in the absence of clear expression of that intention in the statute we do not feel at liberty to draw the line so finely. We think that imposing the exaction in these circumstances clearly penalizes the importer's failure to mark, and therefore the exaction is one which the Secretary has the power to remit or mitigate if in his judgment the conditions for such action appear to exist.

The decisions of the Court of Customs and Patent Appeals cited above did not involve the question of the penal character of exactions such as that in question for purposes of applying Section 1618 and for that reason are distinguishable. It may be pointed out also that since the present exaction was imposed Congress has amended Section 1304 (b) by declaring expressly that this "duty of 10 per centum ad valorem * * * shall not be construed to be penal, and shall not be remitted wholly or in part nor shall payment thereof be avoidable for any cause." See 19 U.S.C.A. § 1304 (c). Congress has therefore removed duties of this character from the scope of Section 1618 for the future, and the fact that it enacted the amendment may be taken as some evidence that the exaction was regarded as penal in character for purposes of remission prior to the amendment's adoption.

It is our judgment, therefore, as the case has been presented, that the exac-

---

[5] Interesting on this subject are the decisions in United States v. La Franca, 1931, 282 U.S. 568, 572, 51 S.Ct. 278, 75 L.Ed. 551; United States v. Constantine, 1935, 296 U.S. 287, 294, 56 S.Ct. 223, 80 L.Ed. 233; and the opinions of the Attorneys General in 1843, 4 Rep. Atty.Gen. 182; 1893, 20 Rep.Atty.Gen. 660.

[6] See Bradford Co. v. American Lithographic Co., 1924, 12 Ct.Cust.App. 318; Lewis & Conger v. United States, 1925, 13 Ct.Cust.App. 22, certiorari denied 1925, 269 U.S. 564, 46 S.Ct. 23, 70 L. Ed. 413; Kee Co. v. United States, 1925, 13 Ct.Cust.App. 105; Sesquicentennial Exhibition Ass'n v. United States, 1932, 19 C.C.P.A., Customs, 288. These cases also hold that the collector's levy and assessment of "additional duties" under Section 1304(b) and its predecessors are reviewable by the customs courts under the protest procedure of Sections 1514 and 1515.

tion was penal for purposes of applying Section 1618, that the Secretary had power to exercise his discretion concerning the merits of remission or mitigation, that his refusal to consider them constituted a failure to exercise his discretion, and that in accordance with the authorities which have been cited the District Court has power to direct that he consider the merits of the petition.

The writer of this opinion finds it necessary to make what he regards as an important reservation. He has been able to reach the foregoing decision because the appellee has not presented, in fact at the hearing here expressly waived, an argument which he thinks might be controlling so as to require a result contrary to that which has been reached if it had been advanced. Ordinarily relief by way of mandamus will not be granted when other adequate relief is available.[7] The Tariff Act appears to afford clear and adequate remedy for persons in appellant's position through recourse to the customs courts. While they are not given power specifically to review directly the decisions of the Secretary under Section 1618, his refusal to remit the exaction necessarily enters into the collector's decision to impose and enforce it.[8] By Section 1514 (19 U.S.C. A.) the collector's decisions as to "all exactions of whatever character" become final within sixty days unless the importer files a protest in writing with him. The collector's decision upon the protest is made reviewable under Section 1515 by the United States Court of Customs and Patent Appeals. The record in this case shows that protest was made but does not disclose whether further proceedings were had regarding it. It seems apparent that if this procedure had been followed a decision by that court might have been obtained as to the penal or nonpenal character of the exaction under Section 1618. Such a decision would be rendered in the ordinary course of customs administration and would seem to afford opportunity to determine conclusively all issues which were presented here. It cannot be assumed that the Secretary would disregard the decision of the Court of Customs and Patent Appeals on the penal character of the exaction, even if adverse to his own, and therefore that he would not in that case reconsider appellant's petition for remission. The protest procedure appears therefore to offer the more appropriate form of relief. However, since the appellee has to all intents and purposes expressly waived this argument, decision concerning it should be reserved until it is presented.

It is proper to add that my brethren do not agree with me in thinking that perhaps other adequate relief was available. Since the statute authorizes the remission or mitigation of a penalty only by the Secretary and since, as they think, under 19 U.S.C.A. §§ 1514, 1515, the jurisdiction of the Court of Customs and Patent Appeals is confined to a review of the decisions of the collector, their opinion is that the action of the Secretary on an application for remission of a penalty in which, as in this case, he declines to act on the ground that the imposition is not a penalty, is not subject to challenge except in a proceeding in the nature of mandamus in a court in the District of Columbia, where the Secretary resides.

The judgment is reversed and the cause remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded.

[7] United States ex rel. Dunkley Co. v. Ewing, 1914, 42 App.D.C. 176; Donner Steel Co. v. I. C. C., 1923, 52 App.D.C. 221, 285 F. 955; Macfadden Publications v. Federal Trade Commission, 1930, 59 App.D.C. 192, 37 F.2d 822; United States ex rel. Frey v. Robertson, 1933, 61 App.D.C. 394, 63 F.2d 457; Parker-Kalon Corp. v. Coe, 1935, 66 App.D.C. 252, 86 F.2d 31.

[8] Cf. the authorities cited in note 6, supra.