**UNITED STATES of America,**
**Appellee,**

v.

**A. E. EDWARDS, t/a Apex Amusement Company, Claimant-Intervenor of Five (5) Coin-Operated Gaming Devices and $257.20 in Coin, Appellant.**

**No. 10637.**

United States Court of Appeals
Fourth Circuit.

Argued Oct. 4, 1966.

Decided Nov. 3, 1966.

Robert M. Musselman, Charlottesville, Va., for appellant.

James C. Roberson, Special Asst. U. S. Atty., for appellee.

Before HAYNSWORTH, Chief Judge, and BOREMAN and CRAVEN, Circuit Judges.

CRAVEN, Circuit Judge:

We share with the district court concern for the plight of taxpayer, A. E. Edwards. Convinced that Edwards had been unfairly treated by his government, the district judge was initially disposed to enter judgment in his favor requiring release of certain property seized by the United States. Subsequently, upon examination of the authorities, the district court concluded that it was without power to afford relief, and entered judgment in favor of the United States, from which judgment Edwards has appealed. United States v. Five (5) Coin-Operated Gaming Devices, 246 F.Supp. 349 (W.D. Va.1965), supplemental opinion, 248 F. Supp. 115 (W.D.Va.1965).

■ The record shows establishment of the facts by informal stipulation in the form of colloquy between court and counsel supplemented only by the oral testimony of Edwards. We think the facts are insufficiently developed to enable us to fairly determine whether or not the district court had the power to relieve the taxpayer of forfeiture of his property, or, alternatively, power to afford him other relief. We accordingly vacate the judgment and remand to the district court with instructions.

Our concern is necessarily predicated upon the present state of the record which tends to show the following:

Edwards, the taxpayer, has been engaged in the business of providing various types of coin-operated devices for amusement purposes to restaurants, pool halls, and truck stops. Some of the machines were within the category of "gaming devices". Five of these were seized by the United States. For several years Edwards apparently paid the taxes due upon said machines, and there was no evidence in the record indicating that he had ever attempted to evade such taxes. In paying the taxes, Edwards used Form 11–B prescribed by the Treasury Department, which form deceived him, the district court found, into believing that the taxpayer has until the end of the calendar month of first use within which to file his return and that he may lawfully place a machine in use and pay the tax thereafter, so long as done by the end of the calendar month of first use. We agree with the district court that the language used in the form clearly misleads the taxpayer to so misinterpret the law. In addition to being deceived by the form itself, Edwards testified that he had been assured by two representatives of the Internal Revenue Service that his established method of paying the tax was above reproach and would result in no penalty other than five percent of the tax which he consistently paid. Although the two government employees who allegedly gave him such information were said to be in the courtroom, their testimony was not offered. It was asserted to us in oral argument, without denial by counsel for the United States, that it is the policy of the Treasury Department to have such witnesses present and to decline to permit them to testify. We are loath to believe it.

It is the government's position that remission of forfeitures of this kind of taxable property is within the sole, exclusive, and discretionary province of the Secretary of the Treasury and that the courts are without power to review his decisions. See 19 U.S.C.A. § 1618; 26 U.S.C.A. § 7327. Assuming the general validity of the proposition, it is still somewhat startling to be told by counsel for the United States in oral argument that taxpayer's petition for administra-

tive relief had been denied but that no reasons for the denial had been communicated to the taxpayer. It is further asserted to us by counsel for Edwards in oral argument, and the United States Attorney said in response he assumed it to be true, that it is the invariable policy of the Secretary to deny such claims for remission of forfeiture and that such policy is formalized in a procedure manual which is said to be accessible to neither counsel for taxpayer nor to the United States Attorney.

▇ Nor is the taxpayer comforted by being told that the proceeding is one in rem against his property and is not against him personally. The in rem concept should not be permitted to deny to a citizen all procedural due process with respect to his claim to recover his property.

In a less extreme situation than that suggested here, it has been held that mandamus may issue to compel the Secretary to consider and act upon the merits pursuant to the power given him by 19 U.S.C.A. Section 1618. Cotonificio Butese, S. A. v. Morgenthau, 74 App.D.C. 13, 121 F.2d 884 (1941).

▇ We are not unsympathetic with the necessary prerogatives of government in the protection of its tax revenues. But "forfeiture acts are exceedingly drastic. They were intended for protection of the revenues, not to punish without fault." United States v. One 1936 Model Ford, 307 U.S. 219, 236, 59 S.Ct. 861, 870, 83 L.Ed. 1249, 1260 (1939).

We suggest, upon remand, that the district court hold a hearing de novo to supplement the record and clarify the facts with respect to:

(a) the taxpayer's record in the past with respect to payment of taxes;

(b) to what extent, if at all, he has previously been permitted to pay the tax after placing the machines in operation without incurring forfeiture of his property;

(c) what representations, if any, were made him by employees of the Internal Revenue Department or the Alcohol and Tax unit of the Treasury Department with respect to his being permitted to pay the taxes after placing the devices in operation;

(d) whether or not the Secretary of the Treasury (or the Attorney General) has considered taxpayer's claim for remission and, if so, the nature of the consideration given by the Secretary, i. e., whether on the merits;

(e) if taxpayer's claim has been denied by the Secretary, whether or not reasons were given by the Secretary for the denial and, if so, what they were;

(f) to what extent, if at all, is there an established policy in the Treasury Department to deny such applications without consideration of the merits;

(g) to what extent is such policy reflected in the procedure manual (referred to by counsel in oral argument before us) and whether said procedure manual operates to the disadvantage of the taxpayer without his knowledge;

(h) whether there yet remains any administrative remedy available to the taxpayer.[1]

Other areas of proper inquiry may occur to the district judge. If the record is fully developed with respect to such matters and the pleadings amended as may be necessary, the district judge will then be in a better position to redetermine whether (a) the taxpayer has in fact been unfairly treated, and (b) whether the court may lawfully fashion appropriate relief.

Vacated and remanded.

---

1. If the district judge concludes that there is available such a remedy, he may in his discretion suspend proceedings in the district court to permit its prosecution.