**UNITED STATES of America,**
**Plaintiff,**

v.

**ONE 1974 MERCURY COUGAR XR 7, VIN: 4A93H586720, LICENSE NO. 220 LJE, its tools and appurtenances, Defendant,**

**Prestina Edna Starks, Claimant.**

**Civ. No. CV 75-737-WPG.**

United States District Court,
C. D. California.

July 21, 1975.

**1326**

William D. Keller, U. S. Atty., Frederick M. Brosio, Jr., Asst. U. S. Atty., Chief, Civ. Div., John E. Nordin, Asst. U. S. Atty., Los Angeles, Cal., for plaintiff.

Alan Saltzman, Los Angeles, Cal., for defendant-claimant.

## MEMORANDUM OF DECISION

WILLIAM P. GRAY, District Judge.

This is a forfeiture action brought by the United States against one 1974 Mercury Cougar, pursuant to 21 U.S.C. § 881, on the ground that the vehicle was used to transport heroin. For reasons hereinafter set forth, forfeiture will be denied and the automobile ordered restored to the claimant.

At the time of its seizure, on December 11, 1974, the defendant vehicle was in the possession of one Felix Mike, then the live-in boyfriend of the claimant-owner, Prestina Starks. The testimony at trial revealed that on the evening of the seizure, Ms. Starks and Mr. Mike were preparing to depart their home to pick up some friends and proceed to a local restaurant, when a friend of Mr. Mike's telephoned with a request for an immediate ride to the Los Angeles Airport. Ms. Starks then suggested to Mr. Mike that he use her car (the defendant vehicle) for the airport trip and that she use his much larger and roomier car to pick up their friends. Mr. Mike was later to meet all of them at the selected restaurant.

Mr. Mike did thereafter drive away in the Cougar, but he and his ultimate passenger were subsequently arrested at the Marriott Hotel after the passenger attempted to sell heroin at a prearranged meeting with persons who turned out to be undercover agents. The Cougar automobile was seized shortly thereafter.

The Government argues that forfeiture is required here simply because there exists probable cause for the institution of the forfeiture action and that the claimant has made no showing of nonforfeitability. It contends further that innocence of the claimant is not a defense and that this court lacks jurisdiction to remit the forfeiture or review the Attorney General's denial of the claimant's petition for remission.

### I. FINDINGS OF FACT

1. Probable cause exists for the institution of this forfeiture action, in

that the facts are of such a nature as to support a reasonable belief that the defendant vehicle was used to transport a controlled substance (heroin).

2. Claimant, Prestina Edna Starks, is the sole legal owner of the defendant vehicle, as evidenced by her California Owner's Certificate (pink slip). The Government has argued that Mr. Mike contributed substantially to the cash purchase price; whether or not and to what extent Mr. Mike did so are irrelevant, in that such matters do not counter the fact that Ms. Starks' legal title is not subject to any limitations or encumbrances.

3. Claimant Starks was not involved in or aware of the wrongful activity and did all that reasonably could be expected to prevent the proscribed use of the property. Ms. Starks undoubtedly was very familiar with Mr. Mike in that they lived together from August 1974 to February 1975, but there is nothing in the record before this court to indicate her knowledge of any involvement by Mr. Mike in narcotics trafficking generally nor anything to indicate her or Mr. Mike's awareness that the trip to the airport would ultimately involve an attempted narcotics sale by the latter's passenger.

4. The claimant's timely-filed petition for remission or mitigation of forfeiture was denied by the Attorney General's office on April 29, 1975.

## II. INNOCENCE OF THE CLAIMANT AS DEFENSE TO FORFEITURE

This court is repelled by the notion that the Government can enforce a forfeiture against an innocent owner-claimant such as Ms. Starks and is of the opinion that under the circumstances of this case an order of forfeiture may well constitute a taking of property in violation of the just compensation provisions of the Fifth Amendment. I find support for such a position in *United States v. United States Coin & Currency*, 401 U.S. 715, 91 S.Ct. 1041, 28 L.Ed.2d 434 (1971) and *Astol Calero-Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 94 S.Ct. 2080, 40 L.Ed.2d 452 (1974).

In *Coin & Currency*, the Supreme Court rejected the Government's argument that the guilt or innocence of the actual owner of money used in a bookmaking operation was irrelevant in a forfeiture proceeding under 26 U.S.C. § 7302 and that, therefore, the forfeiture should not be considered a "criminal proceeding" for purposes of the Fifth Amendment's right against self-incrimination. The Court noted that although the statute did not specifically state that the property shall be seized only if its owner significantly participated in a criminal enterprise, the Court "would not readily infer that Congress intended a different meaning." (401 U.S. at 719, 91 S.Ct. at 1044). In looking at the language of § 7302 and the other statutes regulating forfeiture,[1] the Court concluded that "[w]hen the forfeiture statutes are viewed in their entirety, it is manifest that they are intended to impose a penalty only upon those who are significantly involved in a criminal enterprise." (401 U.S. at 721–22, 91 S.Ct. at 1045).

Having so concluded, the Court found it unnecessary to specifically answer the

---

1. The "other" statute which the Court considered was 19 U.S.C. § 1618:

"An express statutory provision permits the innocent owner to prove to the Secretary of the Treasury that the 'forfeiture was incurred without willful negligence or without any intention on the part of the petitioner . . . to violate the law . . . .' 19 U.S.C. § 1618. Upon this showing, the Secretary is authorized to return the seized property 'upon such terms and conditions as he deems reasonable and just.' It is not to be presumed that the Secretary will not conscientiously fulfill this trust, and the courts have intervened when the innocent petitioner's protests have gone unheeded. *United States v. Edwards*, 368 F.2d 722 (CA 4 1966); *Cotonificio Bustese, S. A. v. Morgenthau*, 74 App.D.C. 13, 121 F.2d 884 (1941) (Rutledge, J.)." 401 U.S. at 721, 91 S.Ct. at 1044.

question of whether imposition of a forfeiture against an innocent claimant would be constitutionally defective. It did, however, state:

> "Even Blackstone, who is not known as a biting critic of the English legal tradition, condemned the seizure of the property of the innocent as based upon a 'superstition' inherited from the 'blind days' of feudalism. And this Court in the past has recognized the difficulty of reconciling the broad scope of traditional forfeiture doctrine with the requirements of the Fifth Amendment. *See, e. g., Goldsmith-Grant Co. v. United States,* [254 U.S. 505, 41 S.Ct. 189, 65 L.Ed. 376] *supra.* . . ." (401 U.S. at 720–21, 91 S. Ct. at 1044).

In *Pearson Yacht Leasing*, the Supreme Court did specifically note that ". . . *Coin & Currency* did not overrule prior decisions that sustained application to innocents of forfeiture statutes . . . not limited in application to persons 'significantly involved in a criminal enterprise.' " (416 U.S. at 688, 94 S.Ct. at 2094). The Court did not, however, foreclose all constitutional attacks on forfeitures:

> "This is not to say, however, that the 'broad sweep' of forfeiture statutes remarked in *Coin & Currency* could not, in other circumstances, give rise to serious constitutional questions. . . . It therefore has been implied that it would be difficult to reject the constitutional claim of an owner whose property subjected to forfeiture had been taken from him without his privity or consent. [Citations omitted.] *Similarly, the same might be said of an owner who proved not only that he was uninvolved in and unaware of the wrongful activity, but also that he had done all that reasonably could be expected to prevent the proscribed use of his property;* for, in that circumstance, it would be difficult to conclude that forfeiture served legitimate purposes and was not unduly oppressive." 416 U.S. at

688–90, 94 S.Ct. at 2094 (Emphasis added).

The record before this court indicates that claimant Starks was wholly uninvolved in and unaware of the wrongful activity and that she did all that could reasonably be expected to prevent the proscribed use of her property. Under such circumstances, I can see no legitimate purpose that would be served by a forfeiture here and in applying *Pearson Yacht Leasing* could well conclude that an order of forfeiture would deprive claimant of her due process rights.

This court, however, is bound by contrary authority in this Circuit. *United States v. Bride,* 308 F.2d 470 (9th Cir. 1962) and *United States v. One 1967 Cadillac Coupe Eldorado,* 415 F.2d 647 (9th Cir. 1969) unequivocally endorse the rule that the innocence or lack of guilt of the claimant is no defense to a forfeiture action. Furthermore, in *United States v. One 1967 Ford Mustang,* 457 F.2d 931 (9th Cir. 1972), *cert. denied,* 409 U.S. 850, 93 S.Ct. 59, 34 L. Ed.2d 92 (1972), this Circuit rejected constitutional attacks against the forfeiture provisions of 49 U.S.C. § 782 as applied to innocent owner-claimants. The opinion relies on the "solid wall of authority" upholding the constitutionality of such forfeitures:

> "We are not convinced that we should undertake to break or hurdle the foregoing wall of authority. Nor, we think, can we override the authority which Congress has delegated to the Attorney General in respect to remission proceedings in cases like these. . . . While we are not unsympathetic to the position of innocent lenders such as is the Bank in these cases, only the Congress or the Supreme Court may, at this time, afford the sought protection." 457 F.2d at 932–33.

Judge Ely, the opinion's author, did, however, append a footnote revealing his misgivings:

> "The dicta in *United States Coin & Currency* may portend the demise of

the doctrine upon which we must base our decision, but the Court's failure to override *Goldsmith-Grant Co.* [254 U. S. 505, 41 S.Ct. 189, 65 L.Ed. 376 (1921)] and its progeny discourages our disregarding the authoritative effect of those cases. See *United States v. United States Coin & Currency*, 401 U.S. 715, 719–21, 91 S.Ct. 1041, 28 L. Ed.2d 434 . . . (1971)." 457 F.2d at 932, fn. 1.

■ This court is of the opinion that the later expressions by the Supreme Court in *Pearson Yacht Leasing*, hereinabove quoted, authorize a much fairer treatment of innocent owner-claimants such as Ms. Starks and give considerable support to a constitutional attack upon the imposition of forfeitures against such owner-claimants. Nonetheless, I believe myself bound by *One 1967 Ford Mustang* as stating the rule currently existing in this Circuit.

## III. THIS COURT'S JURISDICTION TO REMIT FORFEITURES

■ In order to avoid harsh results in forfeiture proceedings, Congress delegated discretionary authority to remit or mitigate such forfeitures:

" . . . the Secretary of the Treasury [in this case the Attorney General] if he finds that such fine, penalty, or forfeiture was incurred without willful negligence or without any intention on the part of the petitioner to defraud the revenue or to violate the law, or finds the existence of such mitigating circumstances as to justify the remission or mitigation of such fine, penalty, or forfeiture, may remit or mitigate the same upon such terms and conditions as he deems reasonable and just . . . ." 19 U.S.C. § 1618.

It is evident that Congress clearly intended by such delegation that forfeitures against wholly innocent parties be appropriately mitigated by the Attorney General. The Government takes the position that the remission or mitigation of forfeitures has thereby been entrusted to the discretion of the determining officer as an act of "executive grace" and that district courts have no jurisdiction to review the Attorney General's exercise of discretion over a petition for remission.

■ This court cannot avoid the conclusion that the Attorney General's failure to grant remission in this case violates the just compensation provisions of the Fifth Amendment. I find support for that conclusion in the above-cited references to *Coin & Currency* and *Pearson Yacht Leasing*, *supra* at p. 1327, which strongly suggest that the imposition of forfeiture against a wholly innocent claimant may violate claimant's Fifth Amendment rights. Particular attention is called to the fact that the Supreme Court's holding in *Coin & Currency* that forfeiture statutes are intended to apply only to those "significantly involved in a criminal enterprise" was based in part upon the Congressional delegation of authority to remit certain forfeitures. (19 U.S.C. § 1618). The Court noted specifically that:

"It is not to be presumed that the Secretary will not conscientiously fulfill this trust, and the courts have intervened when the innocent petitioner's protests have gone unheeded. *United States v. Edwards*, 368 F.2d 722 (CA4 1966); *Cotonificio Bustese, S. A. v. Morgenthau*, 74 App.D.C. 13, 121 F.2d 884 (1941) (Rutledge, J.)." 401 U.S. at 721, 91 S.Ct. at 1045. See fn. 1, *supra,* at p. 1327.

In *United States v. Edwards*, 368 F.2d 722 (4th Cir. 1966), cited in *Coin & Currency*, *supra*, the Fourth Circuit reversed the district court's judgment of forfeiture against certain gaming devices. The appellate court did assume the general validity of the proposition that remission of forfeitures is within the sole discretion of the Secretary of the Treasury (now the Attorney General) and that the courts are without pow-

er to review his decisions, but noted, nonetheless, that:

(1) ". . . it is still somewhat startling to be told by counsel for the United States . . . that taxpayer's petition for administrative relief had been denied but that no reasons for the denial had been communicated to the taxpayer."

(2) "The in rem concept should not be permitted to deny to a citizen all procedural due process with respect to his claim to recover his property."

(3) "We are not unsympathetic with the necessary prerogatives of government in the protection of its tax revenues. But 'forfeiture acts are exceedingly drastic. They were intended for protection of the revenues, not to punish without fault.' [Citation omitted]." 368 F.2d at 723–24.

The court thereupon remanded the case for a hearing de novo and a redetermination of whether the taxpayer had been unfairly treated and whether the court could fashion appropriate relief.

The Government has cited no Ninth Circuit authority precluding this court from declaring the Attorney General's failure to grant remission to be unconstitutional and I do not find the cases relied upon by the Government to be dispositive. In *United States v. One 1970 Buick Riviera*, 463 F.2d 1168 (5th Cir. 1972), *cert. denied*, 409 U.S. 980, 93 S. Ct. 314, 34 L.Ed.2d 244 (1972), the claimant argued that the Attorney General's denial of its request for remission was reviewable by the district court and that failure to grant remission would violate the due process and just compensation provisions of the Fifth Amendment. The circuit court affirmed the district court's refusal to review the Attorney General's action, holding (a) that the

Attorney General has "unreviewable discretion over petitions under 19 U.S.C. § 1618", and (b) that claimant's "due process and just compensation arguments are without merit." That decision, which is not binding upon this court, loses much of its force in light of the above-quoted statements from the subsequent Supreme Court decision in *Pearson Yacht Leasing* which, in my judgment, render this claimant's constitutional claims meritorious.

In *Bramble v. Kleindienst*, 357 F. Supp. 1028 (D.Colo.1973), the district court refused to review the Attorney General's denial of claimant's petition for remission, and rejected claimant's constitutional attack because "plaintiff does not claim complete innocence". As indicated above, I find the claimant here to be completely innocent and accordingly find *Bramble* to be distinguishable from this case. Furthermore, neither *One 1970 Buick Riviera* nor *Bramble* preclude a district court from declaring the Attorney General's failure to grant certain remissions to be unconstitutional if the constitutional claims are found to be meritorious.

In light of all of the foregoing, and in particular reliance upon *Coin & Currency, Pearson Yacht Leasing* and *Edwards*, this court concludes that the Attorney General's refusal to grant remission here is constitutionally defective. I have found that claimant Starks was not involved in or aware of the wrongful activity and that she did all that reasonably could be expected to prevent the proscribed use of the property. The just compensation provisions of the Fifth Amendment, therefore, require that the Government restore the defendant automobile to the claimant.

Furthermore, based upon the record before this court and in the absence of any reasons given for such refusal, it appears that the Attorney General has failed to follow his own regulations.[2]

---

**2.** Pursuant to the authority delegated to him by 19 U.S.C. § 1618, the Attorney General promulgated regulations setting forth the administrative procedures applicable to peti-

Assuming that the Attorney General had before him the same facts as revealed at the trial, and apart from the inherent impossibility of proving a negative, I do not see what more the claimant here could have done to "establish" her fulfillment of the requirements set forth in the regulations.[3]

█ This court is further of the belief that the provisions of the Administrative Procedure Act, 5 U.S.C. § 551 *et seq.*, grant this court jurisdiction to review the denial of a petition for remission. Section 701 of the Act states that the judicial review provisions apply "except to the extent that (1) statutes preclude judicial review; or (2) agency action is committed to agency discretion by law."

19 U.S.C. § 1618 (the delegation of authority to the Attorney General) contains no preclusion of judicial review, and this court finds the "committed to agency discretion by law" exception to be inapplicable by virtue of *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971). There, the applicable statute provided that federal funds should not be granted for highway construction through a public park if a "feasible and prudent" alternative route existed. The Supreme Court held that action of the Secretary of Transportation in granting funds was *not* "committed to agency action" and was, therefore, reviewable. The Supreme Court noted that the exception is "very narrow" and applies only "in those rare instances where statutes are drawn in such broad terms that in a given case there is no law to apply". (401 U.S. at 410, 91 S.Ct. at 821). In applying that standard, the Court held that the words "feasible and prudent" permitted a reasoned decision and that, therefore, there was "law to apply".

It seems to this court that 19 U.S.C. § 1618 is not a statute drawn in such broad terms that there is no law to apply. Certainly, the provision that the Attorney General "may remit or mitigate . . . upon such terms and conditions as he deems reasonable and just" may be construed as a commitment to agency discretion. The phrases "without willful negligence" and "without any intention on the part of the petitioner to defraud the revenue or to violate the law" do, however, constitute "law to apply" in that they provide identifiable standards and guidelines. Viewed in its entirety, therefore, this court believes that § 1618 does not fall within the narrow exception provided in § 701(2) of the Administrative Procedure Act. *United States v. One 1961 Cadillac*, 337 F.2d 730 (6th Cir. 1964), which is relied upon by the Government,

tions for remissions. The relevant regulations provide that:

"(b) . . . The determining official shall consider only whether the petitioner has satisfactorily established his good faith and his innocence and lack of knowledge of the violation which subjected the property to seizure and forfeiture, and whether there has been compliance with the standards hereinafter set forth.

(c) The determining official shall not remit or mitigate a forfeiture unless the petitioner:

(1) Establishes a valid, good faith interest in the seized property as owner or otherwise; and

(2) Establishes that he at no time had any knowledge or reason to believe that the property in which he claims an interest was being or would be used in a violation of the law.

(3) Establishes that he at no time had any knowledge or reason to believe that the owner had any record or reputation for violating laws of the United States or of any State for related crime." 28 C.F.R. § 9.5.

3. With respect to the requirement numbered "(3)", by exercising considerable self control, I refrain from commenting on how such a provision, which in effect requires that a person seeks at his peril to provide a service to a former convict, regardless of the circumstances, squares with the enlightened public policy encouraging reasonable attempts to assist such a person in his rehabilitation.

did hold that § 1618 constituted a commitment to agency discretion, but that decision is not binding on this court and I find it distinguishable in that it was decided before the Supreme Court's decision in *Overton Park*.

■ The appropriate standard for review of discretionary agency action is contained in § 706(2)(A) of the Act which provides that the reviewing court shall hold unlawful and set aside agency action, findings and conclusions found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." This court finds that the Attorney General's denial of claimant Starks' petition for remission was a clear abuse of discretion and an error of judgment in that it ran counter to the statutory delegation of authority in § 1618 and to the Attorney General's own regulations. Ms. Starks clearly acted "without willful negligence" and "without any intention to violate the law", the standards found in § 1618. And as indicated above, she has satisfied the criteria set forth in 28 C.F.R. § 9.5(c).

It is therefore concluded that the Attorney General's denial of claimant Starks' petition for remission was defective and cannot stand. The Government accordingly will be ordered to return the defendant vehicle to the claimant.

The claimant has already been deprived of her vehicle since December 11, 1974. The Government understandably has expressed an intention to appeal from the order of this court and has asked the court to stay execution of its order pending such appeal. This means that the claimant would be deprived of her car for at least an additional year during the process of such appeal. It is the view of this court that such further delay in the return to this innocent claimant of her car would be intolerable. This court accordingly declines to grant such a stay, but does grant a stay of this order for ten days, or until July 31, 1975, in order that the Court of Appeals may assume the responsibility for continuing the stay if so disposed.