UNITED STATES of America, Plaintiff,

v.

ONE 1951 DOUGLAS DC–6 AIRCRAFT et al., Defendants.

Ernesto ZARAGOZA Y., Plaintiff,

v.

The UNITED STATES of America et al., Defendants.

Nos. 78–2418, 79–2118.

United States District Court,
W. D. Tennessee, W. D.

Aug. 31, 1979.

· Devon L. Gosnell, Asst. U. S. Atty., Memphis, Tenn., for USA in both cases.

Michael J. Meehan, Tucson, Ariz., for plaintiff in 79–2118.

Richard D. Burris, Tucson, Ariz., for Estate of Brian Corp.

Allan Neef, Detroit, Mich., for Cryderman Air Service.

ORDER

WELLFORD, District Judge.

The United States brings civil action No. 78–2418 under 19 U.S.C. § 1595a for forfei-

ture of an aircraft, weapons, and ammunition allegedly employed by Brian J. Corp[1] and others in a federal criminal offense. Although the answer of Corp's representative denies the government's claim for forfeiture, the record in the related criminal case establishes as against Corp's successors and all other persons that the aircraft and tackle were lawfully seized by federal officers at Memphis International Airport on April 26, 1977. *See* 19 U.S.C. § 1615; *United States v. Corp, et al.*, No. 77–20118 (November 23, 1977); and the Order of May 31, 1979, in this cause. The weapons and ammunition have been decreed forfeited and have reportedly been delivered to Customs authorities in New Orleans, Louisiana.

The right of the United States to forfeit and sell the DC–6 aircraft is challenged on constitutional and statutory grounds by Ernesto Zaragoza Y., a Mexican citizen. Zaragoza filed a civil action and petition for mandamus in the District of Arizona against the United States, an unidentified Customs Officer, Corp's legal heir, and a corporation allegedly holding title to the aircraft. The complaint alleges that Corp granted Zaragoza a security interest in the aircraft; that $60,000 is owing from Corp's successors on an underlying note; that Zaragoza was uninvolved in the aircraft's illicit use and sought to avoid the same; and that the continued retention and forfeiture of the aircraft by the government will deprive him of a constitutionally-protected property interest without due process of law.

The government moved to dismiss Zaragoza's complaint for lack of subject-matter jurisdiction. Zaragoza opposed and moved for summary judgment on the ground that the government's delay in commencing the forfeiture proceedings was unconstitutional as a matter of law. Although not a party to the proceedings in this District, Zaragoza moved to dismiss the forfeiture action or transfer venue thereof to the District of Arizona. The Arizona Court declined to rule on the motions before it and transfer-

red Zaragoza's action to this District. This Court accepted transfer and denied Zaragoza's motions in the forfeiture action. Memoranda on the jurisdictional and constitutional issues have been filed and considered.

At the outset, the Court must question its jurisdiction even to entertain Zaragoza's statutory and constitutional claims. As noted tentatively in prior orders, Congress has provided a statutory scheme for the disposition of rights in seized property, allocating jurisdiction between executive and judicial agencies for different purposes. The Tariff Act of 1930, 19 U.S.C. §§ 1202 *et seq.*, requires that seizures of property under the Customs laws be reported "immediately" to Customs officials and "promptly" to the United States Attorney for the district of seizure or violation. §§ 1602, 1603. The United States Attorney must then "immediately" investigate the facts of the case and, if appropriate, commence "forthwith" a judicial action to forfeit the property. § 1604. The judgment in such an action vests full ownership of the property in the United States for sale and disposition of proceeds by the Secretary of the Treasury. §§ 1595a, 1613. *See also United States v. Stowell*, 133 U.S. 1, 10 S.Ct. 244, 33 L.Ed. 555 (1890); *Ivers v. United States*, 581 F.2d 1362, 1367 (9th Cir. 1978).[2]

At any time between seizure and sale of forfeited property, any interest-holder may petition the Secretary of the Treasury for remission or mitigation of the forfeiture. If the Secretary or his delegate finds that the property was implicated in criminal activity without unlawful intent or willful negligence on the part of the petitioner, he may afford relief. § 1618. Even after disposition of the property, an innocent interest-holder may obtain remission of an appropriate share of the sale proceeds on the same grounds by petition to the Treasury Department. § 1613.

If an interest-holder files a claim for seized property with Customs prior to the

---

**1.** Corp is now allegedly deceased.

**2.** Summary procedures are also established for property valued at $10,000 or less or subject to

perish, §§ 1607, 1609, 1612, but are inapplicable here.

judicial forfeiture proceeding, the Tariff Act provides that his claim comes on before the District Court in that proceeding, with the burden of proving the claim upon the interest-holder. § 1615. Judicial jurisdiction over the competing claims of government and interest-holder in this proceeding traditionally has been limited to determining whether the defendant vessel or property was in fact involved in criminal activity, for the Act prescribes forfeiture upon a showing of probable cause that property is employed "in any way" in a Customs violation. 19 U.S.C. § 1595a; *The Squanto*, 13 F.2d 548 (2d Cir. 1926); *United States v. One 1975 Mercedes 280S*, 590 F.2d 196 (6th Cir. 1978). Any remission in favor of an innocent interest-holder has been deemed solely an "act of grace" by the executive branch, and the weight of authority continues to be that a decision by Treasury officials to deny a petition under 19 U.S.C. §§ 1618 or 1613 is not subject to judicial review. *United States v. One 1961 Cadillac*, 337 F.2d 730, 733 (6th Cir. 1964); *United States v. One 1972 Mercedes-Benz 250*, 545 F.2d 1233, 1236 (9th Cir. 1976).

At the same time, however, the Supreme Court has postulated circumstances under which the due process guarantee might require relief from a criminal forfeiture, *Calero-Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 689, 94 S.Ct. 2080, 40 L.Ed.2d 452 (1974); and there is emerging lower court authority that claimant/interest-holders may challenge the government's compliance with forfeiture procedures on statutory and constitutional grounds, either in defending the forfeiture action itself, *United States v. Edwards*, 368 F.2d 722 (4th Cir. 1966); *United States v. One 1970 Buick Riviera*, 463 F.2d 1168 (5th Cir. 1972); *United States v. One 1972 Chevrolet Blazer Vehicle*, 563 F.2d 1386 (9th Cir. 1977); or by separate action against the government. *States Marine Lines v. Shultz*, 498 F.2d 1146 (4th Cir. 1974); *Lee v. Thornton*, 538 F.2d 27 (2d Cir. 1976), *rev'd. on other grounds*, 420 U.S. 139,

95 S.Ct. 853, 43 L.Ed.2d 85. The Supreme Court has approved such review in *dicta*. *United States v. U. S. Coin and Currency*, 401 U.S. 715, 721, 91 S.Ct. 1041, 28 L.Ed.2d 434 (1971) (citing *United States v. Edwards*, *supra*); *Calero-Toledo v. Pearson Yacht Leasing Co.*, *supra*, 416 U.S. at 677 n. 11, 94 S.Ct. 2080 (jurisdiction under 28 U.S.C. § 1331).[3]

◼ Based on the foregoing authorities, the Court concludes that Zaragoza may at least assert his statutory and constitutional claims in defense of the government's forfeiture action in this Court. In view of this finding, the motion to dismiss filed by the government in the Arizona court is denied. Until such time as Zaragoza establishes a valid constitutional defense to forfeiture, the Court need not decide whether there is pendent or diversity jurisdiction to adjudicate his claims against Corp's estate and the purported title-holder of the aircraft. Zaragoza's additional claims under 28 U.S.C. §§ 1356 and 1361 are duplicitous and need not be considered independently.

Zaragoza asserts two different constitutional arguments for denial of forfeiture to the government and the substitution of a judicial sale to satisfy his security interest. The Treasury Department has already considered and rejected petitions from both Zaragoza and the purported owner of the aircraft. Zaragoza's first argument, then, is solely procedural: that the government so delayed its investigation and institution of forfeiture proceedings that he has been deprived of a right to prompt adjudication of his property interest. This argument was the basis for Zaragoza's motion for summary judgment in the Arizona district court. Upon review of the facts and authorities submitted, the Court finds no merit in this argument.

The Supreme Court has identified strict due process requirements in the seizure and forfeiture of communicative material also protected by the First Amendment, *United*

---

**3.** Outside of the context of criminal forfeiture, there is authority for direct actions against government officials under the Due Process Clause. *Chicago B & Q R.R. v. City of Chicago*, 166 U.S. 226 (1897); *Hopkins v. Clemson Agricultural College*, 221 U.S. 636, 31 S.Ct. 654, 55 L.Ed. 890 (1911); *Davis v. Passman*, —— U.S. ——, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979).

*States v. 37 Photographs,* 402 U.S. 363, 91 S.Ct. 1400, 28 L.Ed.2d 822 (1971); but has thus far distinguished forfeiture proceedings from the operation of general property protections in other areas. *United States v. U. S. Coin and Currency, supra ; Calero-Toledo v. Pearson Yacht Leasing Co., supra.* Forfeiture has been denied on the ground of unreasonable delay, but none of the cases cited by Zaragoza would bar the government's action in this case.

This forfeiture grows out of extended criminal proceedings against the purported owner of the property and others. *See Ivers v. United States, supra,* 581 F.2d at 1372. The government asserts that when the aircraft was seized on April 26, 1977, both the Bureau of Customs and the United States Attorney for this District were notified immediately as prescribed in 19 U.S.C. §§ 1602, 1603. Zaragoza has not rebutted this contention. Corp, who was arrested by Memphis Police officers concurrently with the seizure, had immediate notice thereof. On June 6, 1977, the Bureau of Customs formally notified Corp's business of the seizure and of administrative procedures for asserting any rights in the aircraft. Zaragoza was not similarly notified because, as he concedes, his security interest in the aircraft was not filed with the Federal Aviation Administration and thus was not known to the government.

Federal officers obtained a warrant for Corp's arrest on June 15, 1977, and an indictment against him on July 12, 1977. On August 8, Corp's business petitioned the Treasury Department for remission of forfeiture under 19 U.S.C. § 1618. From August 12 through November 14, Corp filed and briefed in this Court a motion to suppress evidence obtained in the seizure, which motion was denied on November 23.

On January 26, 1978, the Treasury Department denied Corp's petition to release the aircraft. On March 1, 1978, Corp's attorney filed a protest of this ruling, which was reaffirmed on May 30. Meanwhile, on May 5, criminal proceedings were suspended on the suggestion of the Corp's attorney that he had suffered death outside the country.

On June 2, 1978, fifteen months after creation of the alleged security interest, and nearly as long after the seizure, Zaragoza filed his chattel mortgage with the FAA. On July 6, he filed his own petition under the Tariff Act, necessitating an entirely new administrative investigation. Even so, the United States Attorney proceeded with this forfeiture action on August 17.

■ Zaragoza's own failure to provide timely public notice of his security interest and his own delay in asserting that interest significantly distinguish this case from *United States v. One 1970 Ford Pickup,* 564 F.2d 864 (9th Cir. 1977); *United States v. One Motor Yacht Named Mercury,* 527 F.2d 1112 (1st Cir. 1975); *Sarkisian v. United States,* 472 F.2d 468 (10th Cir. 1973), *cert. den.,* 414 U.S. 976, 94 S.Ct. 291, 38 L.Ed.2d 219; *United States v. One Douglas A–26B Aircraft,* 436 F.Supp. 1292 (S.D.Ga.1977); and *Boston v. Stephens,* 395 F.Supp. 1000 (S.D.Ohio 1975). Although pending administrative proceedings may not in some circumstances justify government delay in seeking judicial condemnation, *e. g. Boston v. Stephens, supra,* even a *per se* rule to this effect would not bar forfeiture here: the government filed this forfeiture action promptly after the conclusion of the related criminal proceedings, without waiting for the Treasury Department to act upon Zaragoza's petition. Despite delay occasioned earlier by the criminal proceedings and Corp's own petition, Zaragoza had not recorded his security interest at that time and cannot complain of those events. *See also White v. Acree,* 594 F.2d 1385 (10th Cir. 1979); *United States v. One 1973 Ford LTD,* 409 F.Supp. 741 (D.Nev.1976). Under the circumstances indicated, the Court finds no unconstitutional delay and no ground for a summary judgment barring forfeiture.

Zaragoza's remaining argument is that forfeiture of the aircraft will extinguish his security interest in violation of substantive due process rights. The Supreme Court has upheld the operation of criminal forfeiture statutes against the property rights of innocent owners or interest-holders. In *Calero-*

*Toledo v. Pearson Yacht Leasing Co., supra,* the court held that the seizure and forfeiture of a leased yacht on which the lessee stored a small quantity of marijuana did not unconstitutionally condemn the property of a lessor who "was 'in no way . . . involved in the criminal enterprise . .' and 'had no knowledge that its property was being used . . . in violation of [Puerto Rican Law].'" 416 U.S. at 668, 94 S.Ct. at 2084. Sufficient justification for the infringement was found in the prevention of "further illicit use of the conveyance" and in the deterrent effect of forfeiture. 416 U.S. at 687–88, 94 S.Ct. at 2094. Still, the court noted that the identified justifications obtain only where "the means that are prescribed for the prevention of a forfeiture may be employed," and postulated two circumstances in which forfeiture might be "unduly oppressive":

> It therefore has been implied that it would be difficult to reject the constitutional claim of an owner whose property subject to forfeiture had been taken from him without his privity or consent . . Similarly, the same might be said of an owner who proved not only that he was uninvolved in and unaware of the wrongful activity, but also that he had done all that reasonably could be expected to prevent the proscribed use of his property.

416 U.S. at 689–90, 94 S.Ct. at 2094–2095 (citations omitted).

 Zaragoza's complaint specifically alleges that he "was uninvolved in and unaware of any wrongful activity by which the said aircraft could be subject to . . forfeiture" and "took all steps reasonably available to him to prevent any illicit or proscribed use of his property." As noted previously, the Treasury Department has already considered and rejected essentially the same claim, and its finding thereon cannot be appealed to this Court. Moreover, with the present record indicating that Zaragoza had not even perfected his security interest at the time of the aircraft's seizure, the Court has some doubt as to whether he can now substantiate such a claim or that he acted with reasonable dispatch. Zaragoza's own pleadings indicate

indeed that Corp had not been granted title to the DC–6 on the date he purported to grant Zaragoza's security interest therein. There is accordingly some doubt as to whether Zarazoga has any substantial property interest to assert or had such an interest at the time of seizure. *See* Affidavit of Cryderman Air Service, Inc.; 49 U.S.C. § 1403(c). In view of the authorities cited previously, however, the Court concludes that prior to final judgment of forfeiture a hearing should be held to afford Zaragoza an opportunity to assert the narrow constitutional defense to forfeiture established in *Calero-Toledo, supra,* and pleaded in his complaint. Since this action proceeds under § 1595a of the Tariff Act, § 1615 applies and places the burden of establishing a defense to forfeiture upon the interest-holder. *See United States v. One 1975 Mercedes 280S, supra; United States v. One 1970 Pontiac GTO 2–door Hardtop,* 529 F.2d 65 (9th Cir. 1976).

It is so ORDERED this 31st day of August, 1979.